**In re Scott A. WALKER, Debtor.**

**Bankruptcy No. 88–01535.**

United States Bankruptcy Court,
N.D. New York.

April 2, 1990.

James F. Selbach, Syracuse, N.Y., for debtor.

Stuart E. Finer, Utica, N.Y., for Paradise Mountain Trailer Park.

Warren V. Blasland, Syracuse, N.Y., trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter is before the Court by way of a motion made by Scott A. Walker ("Debtor"), to modify his confirmed Chapter 13 Plan pursuant to § 1329 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) (West 1979 and Supp. 1989) ("Code"). The Chapter 13 Trustee has filed a written Objection to the Debtor's motion. Oral argument on the Debtor's motion was heard on September 26, 1989 at which the Debtor, the Trustee and unsecured claimant, Paradise Mountain Trailer Park ("Paradise") appeared. The matter was finally submitted for decision on November 13, 1989.

The Court also considers a companion motion by Debtor's counsel seeking interim compensation of $200.00 for services rendered in connection with the motion to modify.

## FACTS

The Debtor filed his petition for relief under Chapter 13 of the Code on October 11, 1988 and his repayment Plan was subsequently confirmed on February 27, 1989. The Plan provided that the Debtor would pay the sum of $215.00 per month over a period of fifty-four months. It further provided that unsecured creditors would receive one-hundred percent of their claims.

At the time of filing, the Debtor resided in a mobile home located at Lot 1C, Paradise Trailer Park, Utica, New York. In his Chapter 13 Statement, the Debtor disclosed a claim held by Key Bank secured by his mobile home in the amount of $4,842.00. He listed the value of the mobile home at $3,000.00. On September 21, 1989, Key Bank filed an amended proof of claim setting forth their claim secured by the mobile home in the amount of $5,010.18. On the proof of claim was the notation, "Security abandoned as junk," and no amount was provided to indicate the fair market value of the Debtor's mobile home.

In his Plan, which was filed with the Court on October 11, 1988, Debtor provided that he "shall surrender the mobile home to Key Bank and any balance due after shall be paid as an unsecured claim."

After filing his petition, the Debtor apparently moved from his mobile home. He has also, since confirmation, allegedly married and resides with his spouse and her child.

## ARGUMENTS

The Debtor seeks modification of his confirmed Chapter 13 Plan on the basis of a change in his financial circumstances. His proposed modification would extend the Plan from fifty-four to sixty months, reduce his monthly payment to the Trustee from $215.00 to $140.00 and ultimately result in a reduced dividend to unsecured creditors from one-hundred to thirty-four percent.

He grounds his request in the fact that, since confirmation of his Plan, he has been married to a woman with a child. The Debtor asserts that his wife does not work and, therefore, he does not realize any additional income. He argues that he is incapable of making the current payments under the Plan because of the additional expenses incurred through support of his wife and her child. The Debtor maintains that if the modification fails to gain the Court's approval, he would be forced to convert to Chapter 7 due to his financial inability to comply with the present terms of the Plan.

The Trustee objects, arguing that the unsecured creditors should not be forced to take a lesser dividend because of a voluntary change in marital status by the Debtor.

In addition, the Trustee alleges the Debtor negligently vacated the mobile home and never advised Key Bank, as holder of the security interest in the mobile home, that they should commence repossession. The Trustee alleges that the Debtor's improper abandonment of the mobile home to Key Bank, directly resulted in its diminution in value. This, in turn, argues the Trustee, forces the unsecured creditors to receive less than under the original Plan. Paradise also objected at the September 26, 1989 hearing. Its objection was that the mobile home was occupying the trailer park and continuing to accrue rental charges because the Debtor had not informed Paradise of his abandonment.

## DISCUSSION

Pursuant to Code § 1329, a debtor may modify his plan at any time before the completion of the payments under such plan. 11 U.S.C. § 1329(a). The plan may be modified to increase or reduce payments or to alter the time for such payments. 11 U.S.C. § 1329(a)(1), (2).

■ Post-confirmation modification of a Chapter 13 plan may be accomplished "if a problem arises in the execution of the plan." H.R.Rep. No. 95–595 p. 125, U.S.

Code Cong. & Admin.News 1978, pp. 5787, 6086, Bankr.L.Ed., Leg.Hist. § 82.4. The debtor, on request with a showing of changed circumstances, may move to modify a plan only upon showing of change in financial circumstances since the confirmation. *See In re Moseley*, 74 B.R. 791, 792 (Bankr.C.D.Cal.1987).

■ Post-confirmation modification by a debtor may be allowed where the modified plan would have been appropriate had the present circumstances existed originally. *See In re Taylor*, 99 B.R. 902 (Bankr. C.D. Ill.1989). In *In re Gronski*, 86 B.R. 428 (Bankr. E.D.Pa.1988), the creditor moved to modify the Chapter 13 plan after confirmation. The court declined to allow modification solely on the grounds that the debtor apparently intentionally understated his expenses. The court required the creditor to show the occurrence of a "substantial change" in the debtor's circumstances. *Id.* at 432.

Other courts cite the legislative history of Code § 1329 explaining that if the debtor has a problem with making future payments he may modify the plan. *See e.g., In re Evans*, 77 B.R. 457 (E.D.Pa.1987). Code § 1329 should be interpreted broadly to allow the plan to accommodate "changed circumstances, so long as the modified plan would have been appropriate had the present circumstances existed originally." *See In re Taylor, supra* 99 B.R. at 904.

■ The Trustee characterizes the Debtor's post-confirmation marriage as a voluntary change in circumstances which should be accorded weight against the proposed modification.

The Court finds the Trustee's objection to be without a sound policy basis. Clearly there is no provision of the Code which is intended to inhibit the right to marry while in bankruptcy. Any such interpretation would turn public policy on its ear by requiring payments to creditors under a confirmed plan at the expense of the debtor's support of his family. Apparently the Trustee would have Chapter 13 debtors, who incur additional expenses due to their post-confirmation marriage, provide to unsecured creditors notice and an opportunity to object to the proposed marriage. Such a scenario stretches beyond recognition the already controversial limits of the bankruptcy court's subject matter jurisdiction.

■ "Marriage is one of the basic rights of man, fundamental to our very existence and survival." *Loving v. Commonwealth of Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967). Even prisoners have a constitutionally protected right to marry. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64 (1987). The obligation of financial support as it flows from the decision, albeit perhaps untimely, to marry or procreate, is not intended to be superceded by the creditor's rights under the Code.

The Trustee has not offered any evidence to controvert the Debtor's assertion regarding his changed circumstances. It appears, in fact, that the Trustee concedes that the Debtor has undergone a significant financial change. Since confirmation of his Plan, the Debtor has been married and has undertaken the obligation to support his spouse as well as her ten year old child. The Debtor has clearly undergone a change in circumstances. As he is unable to make the payments under the current Plan, a problem exists in the execution of the Plan. If the Debtor's present situation had existed originally, the payments to be made by the Debtor would have reflected this ability to pay. Thus, it can be concluded that the Debtor has met the minimum threshold for modification of a plan pursuant to Code § 1329. The Trustee's allegations fail to address the Debtor's showing of changed circumstances.

■ The Court notes here that Code § 1329(b)(1) provides that the requirements of Code § 1325(a) apply to proposed post-confirmation modifications. "The principal import of section 1329(b)(1) is to require that the best-interests test again be satisfied with respect to each allowed unsecured claim belonging to any class to receive reduced or later payments under the plan as modified." 5 L. King COLLIER ON BANKRUPTCY ¶ 1329.01[c] (15th ed.1989).

The Trustee offers no evidence to dispute the Debtor's assertion that his failure to gain approval for the proposed modification would result in conversion of his Chapter 13 case to Chapter 7 which would not be in the best interest of creditors. While the proposed reduction in dividend to unsecured claimants from one-hundred to thirty-four percent is significant, the Court must agree with the Debtor that, in the event of a conversion to Chapter 7, it appears that the unsecured claimants would realize even a smaller percentage of their claim than in the Debtor's proposed modification.

To reiterate, the Trustee has acknowledged that the Debtor has shown changed financial circumstances that did not exist at the time of confirmation. He also has failed to offer any evidence to rebut the Debtor's assertion that the proposed thirty-four percent dividend is in the best interests of creditors. The Trustee's argument that the Debtor's choice to get married should weigh against approval of the proposed modification does not warrant further consideration for the policy grounds indicated earlier.

The second objection of the Trustee is in regard to the Debtor's alleged abandonment of the mobile home. His argument that the Debtor negligently abandoned the mobile home, thereby, causing the reduced dividend to the unsecured claimants is somewhat more troubling. The Court views with strong disfavor a debtor who fails to act in good faith to the detriment of creditors.

In the instant case, however, the Debtor's Chapter 13 Plan stated that he would surrender the mobile home to Key Bank and reject the rental agreement with Paradise pursuant to Code § 365. He has thus not, *per se,* violated the terms of the confirmed Plan. Moreover, the facts with regard to when Key Bank obtained knowledge of the Debtor's alleged abandonment and their subsequent actions or inactions have not been provided to the Court so as to enable it to make a factual determination.

The allegations made by the Trustee do not address the issue of whether the confirmed Plan should be modified as contemplated by the Code. The general grounds for post-confirmation modification are discussed above. The Trustee's objections based upon abandonment of the mobile home appear to sound more as "cause" for dismissal or conversion to Chapter 7 pursuant to Code § 1307(c). Also, a court may not revoke the valid confirmation of a Chapter 13 plan, unless the confirmation was procured by fraud. *See In re Moseley, supra* 74 B.R. at 803. Thus, it appears that absent intentional deceit, the Court will not revoke a confirmed plan.

In the case at bar there is no showing of fraud. The Court, therefore, finds that the Debtor's changed circumstances, together with the general policies of debtor rehabilitation and best interest of creditors under Chapter 13, weigh more heavily in favor of granting modification in light of the Trustee's mere allegations of possible bad faith on the Debtor's part. The fact remains that the Debtor's changed financial circumstances do not enable him to make the future payments. Therefore, the modification of the Debtor's Chapter 13 Plan as proposed is appropriate.

For the foregoing reasons, the Court hereby grants the Debtor's motion in its entirety. Accordingly, the monthly payments will be reduced from $215.00 to $140.00, and the Plan will be extended to sixty months. The dividend to unsecured creditors will be reduced from 100% to 34%.

The Court has considered simultaneously with this motion, the motion of Debtor's counsel for interim compensation in the sum of $200.00. After reviewing the time records submitted in support thereof, the Court will approve the additional fee of $200.00 and provide that it may be paid through the Chapter 13 Plan so long as payment of the fee will not reduce the dividend to unsecured creditors as approved herein.

IT IS SO ORDERED.