In re Gwendolyn R. HUTCHINS, Debtor.

Bankruptcy No. 90 B 12947.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 26, 1994.

Jeanne Ann Szymanek, Zalutsky & Pinski, Chicago, IL, for debtor.

Joel Nathan, Asst. U.S. Atty., Chicago, IL, for U.S.

### MEMORANDUM OPINION ON THE MOTION OF UNITED STATES FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

### INTRODUCTION

Debtor Gwendolyn R. Hutchins ("Debtor" or "Hutchins") discharged much of her debt in a prior Chapter 7 bankruptcy. In this second bankruptcy proceeding, she filed for relief under Chapter 13 of the Bankruptcy Code, Title 11 U.S.C. She initially filed an unsecured claim herein on behalf of a creditor that held a second mortgage on her home, South Central Bank and Trust Co. ("South Central"), a claim that she now seeks to withdraw. The claim held by South Central was subsequently assigned to the Department of Housing and Urban Development ("HUD"). The first mortgage holder on that home foreclosed, and Debtor then voluntarily abandoned her home by order entered herein December 1, 1992. HUD later filed its own secured claim as successor to South Central.

Now that the home is gone, Debtor seeks to amend her confirmed Chapter 13 plan so as to stop future payments to any secured creditors because she argues they are no longer secured. She further seeks to recover any payments made by the Trustee to HUD after December 1, 1992. She also seeks to amend her confirmed Plan because of asserted changes in her finances.

HUD contests Hutchins' efforts to block future payments to it. It moved for summary judgment on its secured claim and Debtor's objections thereto. Following briefings of the motions, the Court was obliged to ask parties to brief the effect of Debtor's earlier Chapter 7 bankruptcy proceeding on the issues presented here. They did so, but did not mention therein the pertinent fact that the debt due now to HUD was not scheduled in Debtor's Chapter 7 petition. There is no indication that HUD's predecessor, South Central, received any notice of Debtor's pending Chapter 7 petition. Therefore, the Court again was obliged to ask the parties to brief this important issue by further supplemental briefs.

For reasons stated below, Debtor's motion to withdraw the claim she filed post-confirmation on behalf of South Central is denied. Debtor's motion to recover payments to HUD made on that claim under her confirmed Plan and to block future payments to HUD under the Plan is denied. HUD's motion for summary judgment on its secured claim is denied, and Debtor's objection to that secured claim is sustained. However, her motion to amend the confirmed Plan by reason of asserted change in financial circumstances will be set for an evidentiary hearing.

### UNDISPUTED FACTS

The facts underlying this dispute are not in dispute. Hutchins formerly owned a home located at 2134 East 99th Street, Chicago, Illinois (the "Hutchins' Property"). America's Mortgage Company ("AMC") held a first mortgage on the Hutchins' Property. AMC's senior lien secured a loan in the principal amount of $33,000.00. On October 12, 1987, Debtor borrowed $5,070.00 from South Central to build a garage. See HUD's

Statement of Material Facts, Ex. E ("Retail Installment Contract—Home Improvement"). Concurrent with the loan, Debtor executed a trust deed in favor of South Central which created a lien on her residence. See HUD Ex. E ("Trust Deed"). This document was recorded with the Cook County Recorder of Deeds on October 22, 1987. Id. The South Central lien was junior to the first mortgage held by AMC.

This Chapter 13 proceeding follows Debtor's earlier bankruptcy filed in this Court under Chapter 7 of the Bankruptcy Code on December 8, 1987, in case No. 87 B 18129. That filing came after the South Central debt was incurred. However, while AMC was a scheduled creditor in that proceeding, South Central was not. Nor was South Central noticed in that case. There is no indication that Debtor reaffirmed any of her debts in the Chapter 7 case. Hutchins received a Chapter 7 discharge by order entered June 13, 1988. The Chapter 7 Trustee reported that this was a no-asset case.

Debtor filed her petition for relief in this proceeding under Chapter 13 of the Bankruptcy Code on July 17, 1990. On schedules filed along with her petition, Debtor listed AMC as having secured claims for both the principal loan amount and an arrearage of $2,600.00. However, on those schedules she listed South Central as having only an unsecured claim in the amount of $4,282.00.

Debtor's schedule of assets valued her residence at $33,000.00 and valued her equity therein at zero. However, she also claimed to have $7,500.00 of equity in her residence that was exempt from creditors. See Debtor's Exemption Election. Hutchins' Chapter 13 Plan was confirmed herein on October 9, 1990, without objection by any creditor. The Plan called for her to make two payments of $108.00 each month to the Chapter 13 Trustee over 60 months. The Plan further obligated her to pay $413.00 a month directly to AMC on account of the principal indebtedness due on her first mortgage. The Plan Summary provided that the only secured debt to be paid through the Chapter 13 Trustee was the $2,600.00 pre-petition arrearage due to AMC, the debt to South Central being included among the unsecured

obligations. However, under Debtor's Plan, all scheduled unsecured as well as secured creditors were to be paid 100% of their claims. Thus, as South Central's successor, HUD is presently entitled to be paid 100% of its claim under the confirmed Plan, whether that claim is secured or unsecured.

South Central did not file a proof of claim. Therefore, on April 5, 1991 (after confirmation), Debtor filed a proof of claim on behalf of South Central, pursuant to 11 U.S.C. § 501(c), listing that claim as unsecured debt in the amount of $4,282.00. HUD Ex. C. On April 23, 1991, South Central assigned its bankruptcy claim herein to HUD. HUD Ex. D. HUD thereby succeeded to any lien rights of South Central.

On February 25, 1992, AMC moved to dismiss Debtor's Chapter 13 case, or alternatively to modify the automatic stay to permit it to foreclose on Debtor's residence, based upon Debtor's failure to make timely current mortgage payments to it. That motion was resolved by entry of an agreed order providing that Debtor would cure the post-petition defaults through a schedule of payments. The order further provided that the stay was conditionally modified so AMC could pursue a foreclosure action in state court if Debtor failed to make any of the agreed payments.

In June of 1992, Debtor was unable to make the agreed payments, and AMC initiated foreclosure proceedings in the Circuit Court of Cook County, Illinois. Debtor then moved out of her house, and filed a motion here to abandon her interest in the Hutchins' property. Debtor's motion to abandon was allowed by order of this Court entered December 1, 1992.

On January 26, 1993, HUD filed its proof of claim to replace the unsecured claim filed by Debtor for South Central. HUD classified its claim as secured in the amount of $4,114.21. The foreclosure sale of the Hutchins' Property occurred subsequently on June 9, 1993.

A number of motions and issues currently pend. On October 30, 1992, Debtor moved (1) to amend her confirmed Plan so as to reduce the percentage to be paid to unsecured creditors, and (2) to withdraw the unsecured claim she had filed on behalf of South Central, now held by HUD. That motion to amend her Plan was based on Debtor's assertion that her financial circumstances had changed, and sought to reduce payments to unsecured creditors from 100% to 10%. The changed circumstances alleged were these: that she had a baby, needed a new vehicle for work, and could not afford 100% payments to unsecured creditors. Debtor also sought to withdraw the proof of claim she had filed on behalf of the second mortgage holder on the ground that HUD could pursue its rights as a second mortgage holder in the state court mortgage foreclosure proceedings initiated by AMC.

Debtor also objected to the new proof of secured claim filed by HUD. On January 26, 1993, HUD moved for summary judgment on its secured claim and the objections thereto.

Finally, Hutchins filed a second motion to amend her Chapter 13 Plan on June 29, 1993. This motion sought to discontinue all Plan payments after December 1, 1992 to creditors that originally held liens on the property, and also sought to recover all Plan payments to such creditors after that date. Debtor's second motion to amend her Plan supplemented the first, and gave an additional ground for such amendment. This supplemental motion was not based on a change in financial circumstances, but rather rested on contentions that formerly secured creditors are now unsecured.

Debtor did not file a statement of disputed facts in compliance with Local District Rule 12(n). Therefore, all the facts listed in HUD's Rule 12(m) statement are deemed admitted under the Local District Rule, which has been adopted by the District Court as a Bankruptcy Court rule.

### JURISDICTION

The pending matters in issue are before the Court pursuant to 28 U.S.C. § 157, and is referred under Local District Rule 2.33. This Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K), and (L).

## DISCUSSION

To resolve the pending motions, two issues must be resolved: The first is whether HUD continues to have a claim, secured or unsecured, against Debtor notwithstanding: (1) Debtor's receipt of a Chapter 7 discharge; (2) Debtor's abandonment of her interest in the property; and (3) sale of the home in a foreclosure sale. For reasons discussed, HUD is found to have only an unsecured claim.

The second issue is whether Debtor can amend her Plan to reduce payments to unsecured creditors because of her changed circumstances. That issue requires an evidentiary hearing to resolve.

### Summary Judgment Standards

For HUD to prevail on its motion for summary judgment, the movant must meet the criteria of Fed.R.Civ.P. 56 (Fed. R.Bankr.P. 7056):

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

Under Fed.R.Civ.P. 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990); *La Preferida v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 905 (7th Cir.1990). The purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson,* 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita,* 475 U.S. at 585–86, 106 S.Ct. at 1355.

### Arguments Of The Parties

Debtor seeks to deny HUD either a secured or unsecured claim in her pending bankruptcy. She also seeks to prevent future Plan payments to HUD and to recover payments made after the date her home was abandoned.

Debtor first reasons that any personal claim HUD had against her was discharged in the preceding Chapter 7 case, even though HUD's predecessor in interest was not scheduled therein or sent notice thereof, and despite her own treatment of HUD's predecessor in this proceeding as having an unsecured claim. Debtor further reasons that any *in rem* claim against the subject property which survived the Chapter 7 discharge would have to be satisfied from proceeds of the foreclosure sale that followed abandonment of her home. Debtor maintains, because of her Chapter 7 discharge, that HUD has no personal recourse against her and that all further attempts to collect the unsecured claim filed by her through the confirmed Plan proposed by her violate the discharge injunction of 11 U.S.C. § 524.

Debtor initially maintained further in this flurry of motions that, in this proceeding when filed, HUD never had a secured interest in the Hutchins' property because the property lacks sufficient value. Hutchins' Objection to Claim of HUD at ¶ 11. She asserted that the fair market value of the property was $40,000.00, while the senior lien of AMC was $40,447.00.[1] Thus she argues that the bankruptcy estate lacked equity after the claims of the first mortgagor AMC were considered. She thereby contemplated

---

1. AMC's total claim was calculated by Hutchins as follows: $33,000.00 was the prepaid balance at the time of filing; $3,911.00 was the pre-petition arrearage at the time the automatic stay was lifted; and $3,536.00 was the post-petition arrearage through October 1992.

a so-called "strip down" of HUD's secured lien under 11 U.S.C. § 506(a). However, that effort has since been clearly prohibited in Chapter 13 by the holding in *Nobelman v. American Savings Bank,* — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

HUD argues that its claims against Debtor are not barred by the Chapter 7 proceeding because South Central was never scheduled as a creditor in that proceeding. HUD also argues in the alternative that, if Debtor is allowed to withdraw the claim she filed in this Chapter 13 proceeding on South Central's behalf, HUD should nonetheless be allowed to file its secured claim because a secured claim survives a bankruptcy proceeding regardless of whether a proof of claim is filed. HUD further argues, according to § 502 of the Bankruptcy Code, that any objection of Debtor to its claim had to exist as of the date the bankruptcy petition was filed. HUD argues that Debtor cannot post-confirmation reclassify its claim as unsecured rather than secured due to changed circumstances, because such reclassification does not fall within grounds for allowing modification of a confirmed plan as provided in 11 U.S.C. § 1329.

### Effect of Prior Chapter 7 Proceedings

■ Debtor first argues that her personal liability to HUD was discharged in her earlier Chapter 7 case. However, the claim subsequently assigned to HUD was not scheduled in the Chapter 7 case. Section 523(a) discusses the scope of discharge in a Chapter 7 case:

A discharge under section 727 … of this title does not discharge an individual debtor for any debt—

. . . . .

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, and in time to permit—

(A) if such debt is not of a kind specified in paragraphs (2), (4), or (6) of this

subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.

11 U.S.C. § 523(a).

■ There has been no showing that South Central (then the second mortgagee) received notice or had actual knowledge of Debtor's Chapter 7 case. However, since the Chapter 7 case was a no-asset proceeding and HUD does not claim that the debt to its predecessor should be non-dischargeable under 11 U.S.C. § 523(a)(2), (4) or (6), the personal debt to South Central would usually be deemed discharged despite failure to schedule or notice that creditor. *Stucker v. Cardinal Building Materials Co.,* 153 B.R. 219 (N.D.Ill.1993) and cases cited.

Here, however, an unusual circumstance bars Debtor from claiming that her personal debt on the second mortgage was discharged.

The basic rationale behind the *Stucker* line of cases is that failure to schedule a creditor in a Chapter 7 proceeding does not bar the debt from discharge under § 523(a) unless that omission affects the creditor adversely. If the scheduling and noticing omission prevents the creditor from receiving a dividend from a Chapter 7 proceeding with assets, that will make § 523(a) applicable to block discharge. If such occurrence will block a creditor from filing a timely proceeding which a creditor seeks to assert to bar dischargeability of debt under § 523(a)(2), (4) or (6), that would certainly deprive the creditor of valuable rights and make § 523(a) applicable to bar discharge of the debt in question.[2]

Here, the omission to schedule on motion in the Chapter 7 proceeding affected South Central adversely in another way. It deprived South Central of the knowledge that Debtor could claim that the debt had become non-recourse because the personal debt had been discharged. Then, by filing an unsecured claim herein for South Central in a Plan providing 100% payment to unsecured creditors, Debtor put South Central in a position where it appears protected by a Plan

---

2. An alternative approach to the latter scenario is to rule that the debtor loses any right to assert the Rule 4007(c) time limit for filing actions to bar dischargeability. *In re Grant,* 160 B.R. 839 (Bankr.S.D.Cal.1993).

and a claim on its behalf, whereas, unbeknownst to it, Debtor could claim it held only a lien, not a personal claim.

In these circumstances, for reasons now to be discussed, Debtor is judicially estopped from denying the personal claim of South Central to which HUD has succeeded.

### *Application of Judicial Estoppel*

■ Judicial estoppel, also known as *estoppel in pais* or the doctrine of inconsistent positions, prevents a party that has benefited from taking one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so. *Kale v. Obuchowski,* 985 F.2d 360 (7th Cir. 1993); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,* 910 F.2d 1540, 1547–48; 1551 (7th Cir.1990); *In re Cassidy,* 892 F.2d 637, 641 (7th Cir.), *cert. denied, Cassidy v. Commissioner,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). The doctrine is intended to protect the courts from being manipulated by litigants who seek to prevail twice on opposite theories. *Scarano v. Central R.R. Co.,* 203 F.2d 510, 513 (3d Cir.1953).

■ Judicial estoppel is a flexible standard not reducible to a pat formula. *Czajkowski v. City of Chicago,* 810 F.Supp. 1428, 1444 (N.D.Ill.1992); *see Levinson v. United States,* 969 F.2d 260, 264 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992). The flexible standard for judicial estoppel permits consideration of all circumstances involved. *Czajkowski,* 810 F.Supp. at 1445. However, the Seventh Circuit has placed certain boundaries on the application of this doctrine. *Levinson,* 969 F.2d at 264. First, the litigant's later position must be clearly inconsistent with the earlier position. *Id.; Cassidy,* 892 F.2d at 641. The facts at issue in both cases must be the same. *Levinson,* 969 F.2d at 264; *Himel v. Continental Illinois Nat'l Bank & Trust Co.,* 596 F.2d 205, 210–11 (7th Cir.1979). Finally, the party to be estopped must have convinced the court to adopt its position; a litigant is not forever bound to a losing argument. *Levinson,* 969 F.2d at 264–65; *see Astor Chauffeured Limousine Co.,* 910 F.2d at 1548; *Cassidy,* 892 F.2d at 641. While a

party must prevail on the position it took in the prior litigation, it is not essential that the party received a benefit from its earlier position. *Czajkowski v. City of Chicago,* 810 F.Supp. 1428, 1444 (N.D.Ill.1992); *see Levinson,* 969 F.2d at 265; *Allison v. Ticor Title Insurance Co.,* 979 F.2d 1187, 1193 (7th Cir. 1992); *Witham v. Whiting Corp.,* 975 F.2d 1342, 1344 (7th Cir.1992).

■ In Hutchins' case, she benefited from the legal position she asserted, which was that South Central had an unsecured claim on which it was to be paid 100%. By taking this position, she kept her second mortgage cured and current through her Chapter 13 Plan, and thereby prevented South Central from foreclosing on her home. This Court approved the position asserted by Hutchins by confirming the Debtor's Plan. Moreover, the rule of judicial estoppel does not require that a party obtain a judicial decision in a strict sense; the rule simply provides that a party must prevail on the position originally asserted. *See Kale,* 985 F.2d at 361–62 (a party bound in subsequent litigation by the position asserted when getting court to approve property settlement).

While Debtor did not reaffirm any debts during her Chapter 7 case, the confirmed Chapter 13 Plan had the practical, if not legal, effect of reaffirming her South Central debt. A debtor can choose to file under either Chapter 7 or Chapter 13. There are benefits and detriments associated with each choice. Generally a debtor selects a Chapter 13 in order to retain some property. The tradeoff is that the debtor must pay for the property with future income under the Chapter 13 Plan. The debtor who filed in Chapter 7 sheds all personal debt, but the detriment is that the debtor loses all property that is not protected by an exemption. A debtor who files in Chapter 7 and reaffirms selected debts is in effect getting the best of both worlds. That debtor is relieved of almost all pre-petition liability, except for the liability corresponding to debts elected to be reaffirmed, thereby retaining selected property.

In the Hutchins' case, she sought the benefits of reaffirmation without going through the reaffirmation procedures so as to be

bound to the debt if the benefit proved inadequate. Hutchins sought to be relieved of all pre-petition debt. However, she wished to keep her home. Hutchins agreed via the Chapter 13 Plan to pay the pre-Chapter 7 debt to South Central in an effort to prevent foreclosure efforts against her home. It would be inequitable to allow Hutchins to reap the benefits of her convoluted tactics, to-wit, the continued enjoyment of her home for over two extra years, without requiring her also to bear the burdens of the claim she filed for South Central. She is estopped now from taking back commitments made here in order to obtain benefits partially obtained thereby. She is therefore estopped from claiming that the South Central debt was discharged in her Chapter 7 proceeding.

### Debtor's Motion to Withdraw Unsecured Claim of HUD

■ Alternative to claiming that her personal debt to South Central was discharged in her Chapter 7 proceeding, Debtor moved to withdraw the unsecured claim she filed post-confirmation on behalf of South Central. Debtor argues that it has the right to withdraw that claim because South Central failed to file a timely proof of claim and object to the proof of claim filed by Debtor on its behalf. Debtor provided no statutory authority or precedent to support her motion to withdraw that claim she filed, which now stands on behalf of HUD. Bankruptcy Rule 3006 is the provision allowing withdrawal of a proof of claim. It provides that "a *creditor* may withdraw a claim as of right by filing a notice of withdrawal except as provided by this rule." Fed.R.Bankr.P. 3006 (emphasis added). While a creditor is allowed to withdraw a claim it has filed, no provision of bankruptcy code allows a debtor to withdraw a claim filed by that debtor on behalf of a creditor.

■ Nor has any compelling reason been shown for the Court to allow withdrawal of the unsecured South Central claim. A debtor generally files a claim on behalf of a creditor primarily for benefit of the debtor. A debtor will normally file such a claim on behalf of a creditor to ensure that any non-dischargeable debts will receive some distribution from the bankruptcy estate, thus diminishing the debtor's post-discharge liability on the same debts. Here, Debtor filed the claim on behalf of South Central post-confirmation to bring it under the Plan, all as part of her attempt at the time to save her home. She wanted South Central to be paid so that it would not attempt foreclosure and precipitate a battle here to assert Debtor's pre-*Nobelman* lien strip-down theory. The mere fact that this claim no longer is viewed as benefiting Debtor is not a ground for withdrawing it. The claim was filed after confirmation as part of the Plan, and the Plan is a contract between a debtor and the creditors. An order of confirmation makes a plan binding on the debtor and on all creditors provided for by the plan. *In re Casper,* 154 B.R. 243 (N.D.Ill.1993); 2 Robert E. Ginsberg, Robert D. Martin, *Bankruptcy: Text, Statutes, Rules,* § 15.05[i] at 15–100 (3d ed. 1992). Merely because a debtor's tactical expectations did not pan out is no reason to disregard what happened. A debtor may not take a tactical position and then withdraw from it at will when things do not work out as hoped. Indeed, for reasons previously discussed, Debtor is estopped from such claim withdrawal.

Accordingly, Debtor's motion to withdraw the unsecured claim she filed on behalf of HUD is denied.

### Debtor's Objection to Secured Claim of HUD

■ Even if there were a discharge of the South Central debt as a personal obligation of Debtor, that would not discharge the pre-petition South Central *lien* against Debtors' property. If a lien is not avoided in bankruptcy, it survives a Chapter 7 discharge and may be enforced following discharge against property on which the lien exists. A mortgage lien in such circumstances remains a "claim" against Debtor that can be rescheduled under a later Chapter 13 plan. *Johnson v. Home State Bank,* 501 U.S. 78, ——, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991); *See* Vol. 2, David G. Epstein, Steve H. Nickles, and James J. White, *Bankruptcy,* § 7–10 ¶ 300 (1992), and authorities cited. The mortgage holder still

retains a "right to payment" in the form of its right to proceeds from sale of Debtor's property. *Johnson*, 501 U.S. at ——, 111 S.Ct. at 2154. Once the mortgage is foreclosed, the *in rem* claim may be satisfied from proceeds of the foreclosure sale.

Only an unsecured claim was filed by Debtor on behalf of HUD's predecessor South Central. Debtor later filed an objection to the "secured" claim of HUD on October 31, 1992, even before HUD filed a secured claim. Debtor then anticipated that HUD would file a secured claim. Fearing that Debtor would be allowed to withdraw the claim she filed on behalf of the second mortgagee, HUD did indeed file its secured claim on January 26, 1993.

In Debtor's objection to the secured claim of HUD, she notes that (1) she has abandoned her interest in the property, (2) the property has been foreclosed and a foreclosure sale held, and (3) the earlier Chapter 7 proceeding discharged her personal liability on the debt. Therefore, she argues that HUD can no longer have a secured interest in the property.

■■■■ Unlike a proof of claim which must be filed before the claims bar date, an objection to a proof of claim may be filed at any time. *In re Thompson*, 965 F.2d 1136, 1147 (1st Cir.1992) (*citing In re Kolstad*, 928 F.2d 171, 174 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991)). A claim may always be reconsidered "according to the equities of the case." 11 U.S.C. § 502(j). Thus, Debtor may now object to the assertedly secured status of HUD's claim based either upon facts as they existed upon the bankruptcy filing or upon the foreclosure sale that took place after confirmation, or both.

■■■■ The party objecting to a claim has the burden of producing some evidence or ground tending to defeat it. *In re Simmons*, 765 F.2d 547, 552 (5th Cir.1985). Thus, Debtor has the burden of showing that HUD has no valid secured claim. She has met that burden. Regardless of whatever lien rights South Central had when this proceeding was

filed, its successor HUD has no secured claim now.

### HUD Now Has No Lien, Therefore No Secured Claim

HUD's secured claim assigned to it by South Central was originally secured by the property. Under Illinois law, the lien representing HUD's claim was extinguished by the foreclosure sale on June 9, 1993 and the judicial confirmation of the sale. *In re Kohler*, 107 B.R. 167, 169 (Bankr.S.D.Ill.1989); *see* 735 ILCS 5/15–1404, 5/15–1501 (1993) ("except as provided in Section 15–1501(d), the interest of any person who is allowed to appear and become a party [to a foreclosure action] shall be terminated, and the interest of such party in the real estate shall attach to the proceeds of the sale"). No party has argued herein that the June 9, 1993 foreclosure sale was not properly confirmed.

HUD's secured claim cannot be allowed, and its motion for summary judgment must be denied, because it no longer has a lien on any collateral and so is no longer a secured creditor. Before HUD filed its motion in January of 1993, Debtor abandoned any and all interest in the subject property, thus enabling AMC and South Central (and HUD) to foreclose on the property. The foreclosure that followed wiped out HUD's second mortgage and transferred its rights to the foreclosure proceeds, if any. The interest of Debtor in that property was likewise ended. The lack of foreclosure proceeds does not leave HUD with a secured claim here. A secured claim cannot stand when there is no lien. Thus, HUD's secured claim is overruled and its motion for summary judgment denied as a matter of law, and Debtor's objection thereto is sustained.

### Debtor's Motion to Amend Her Confirmed Plan

■■■■ When Debtor originally filed an unsecured claim on behalf of South Central and offered 100% to all creditors, whether secured or unsecured, her Plan was confirmed. However, Hutchins has moved to amend the confirmed Plan to reduce her payments to HUD due to changed financial

circumstances.[3] Under Hutchins' proposed amendment to the Plan, her previously secured creditors would receive no Plan payments after she was allowed to abandon interest in her home on December 1, 1993. In addition, she seeks refund of any Plan payments received by such creditors after that date.

Hutchins' ability to modify her confirmed Chapter 13 Plan is governed by 11 U.S.C. § 1329, which provides in relevant part:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed secured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments

. . . . .

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and hearing, such modification is disapproved.

Pursuant to this provision, Debtor may propose to modify her Chapter 13 Plan to reduce the amount payable to unsecured creditors. *See Collier on Bankruptcy,* ¶ 1329.01[2][a] (15th Ed.1993) ("the chapter 13 debtor ... may propose to ... decrease the aggregate amount of the payments, that is, the percentage payable, on claims belonging to one or more classes designated by the confirmed plan").

 Such modification is usually permitted only upon showing of a change in a debtor's financial circumstances. *In re Johnson,* 708 F.2d 865, 868 (2d Cir.1983); *In re Moseley,* 74 B.R. 791, 799 (Bankr.C.D.Cal. 1987). Ordinarily it is said that changed

circumstances only justify a modification if the change "could not have been reasonably anticipated [by the debtor] at the time of confirmation." *In re Bereolos,* 126 B.R. 313, 324–26 (Bankr.N.D.Ind.1990). A case of changed circumstances justifying a modification was illustrated in *In re Walker,* 114 B.R. 847 (Bankr.N.D.N.Y.1990). There, the court permitted a Chapter 13 debtor to modify his payments to unsecured creditors from 100% to 34% because the debtor was married postconfirmation and became burdened with supporting his new wife and her child. *Id.* at 849–51.

The Plan change sought here is based only partly on changed financial circumstances. Additionally, the proposed amendment is based on the history of the debt involved here, particularly Debtor's abandonment of her home on December 1, 1992, and the end to liens of AMC and HUD through foreclosure sale.

Debtor has requested a refund of Plan payments made to secured creditors, including HUD, between the time she abandoned her property and the time she moved to amend her Plan. Because South Central did not have a secured claim on file at that point during these proceedings, any distribution to it or HUD received from the Chapter 13 Trustee was as an unsecured creditor entitled to receive 100% under the confirmed Plan. Such payments were pursuant to the Plan, not on South Central's or HUD's secured claim.

 Debtor is not presently entitled to a refund of Plan payments to HUD. As previously noted, a confirmed Chapter 13 Plan represents a contract between Debtor and her creditors until it is properly modified. Section 1327(a) provides:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

---

3. In Hutchins' prayer for relief contained in her motion to amend her Plan, she asks this Court to "enter an order amending the plan to provide for no plan payments to creditors with a lien on debtor's property after December 1, 1992". However, Debtor did not contend that AMC received any payments pursuant to her Chapter 13 Plan after December 1, 1992.

Debtor can hardly complain that the Trustee carried out her contract or that HUD seeks its rights under the confirmed Plan. A confirmed Plan must be carried out until and unless it is amended. Moreover, any such recovery must be sought by Adversary Complaint as required by Fed.R.Bankr.P. 7001. Accordingly, Debtor's motion for such relief is denied.

Debtor is estopped from claiming that the unsecured *in personam* debt owed South Central and its assignee HUD was discharged in the Chapter 7 proceeding. Therefore, HUD is free to pursue it, and Debtor's attempt to amend her confirmed Plan must be addressed. The only way to do that is through an evidentiary hearing which will be set by separate order.

### CONCLUSION

Accordingly, by orders entered separately this day, HUD's motion for summary judgment on its secured claim is denied. HUD is and was entitled to receive funds pursuant to Hutchins' confirmed Chapter 13 Plan, which scheduled the HUD claim as unsecured, at least until and unless Debtor's motion to amend her Plan is granted. Debtor's motion for a refund of payments made under the Plan is denied.

However, Debtor's motion to amend her Plan due to change of financial circumstances will be set for trial so that evidence can be taken pertinent to that motion.

In light of the foregoing, it is appropriate to freeze all further payments from the Chapter 13 Trustee to HUD or AMC until the remaining issues are decided. The order will require those monies to be held by the Trustee (sequestered for possible benefit of those creditors) and not distributed to other creditors. Nothing in this Order excuses the Debtor from continuing to make Plan payments to the Chapter 13 Trustee.