In re James Lee HILL, Debtor.

George W. LEDFORD, Chapter 13 Trustee, Plaintiff,

v.

FIDELITY FINANCIAL SERVICES, Progressive Insurance Company, Defendants.

Bankruptcy No. 3–92–03130.
Adv. No. 3–94–030.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Nov. 22, 1994.

See also 152 B.R. 204.

**950**

Steven C. Katchman, Dayton, OH, for Fidelity Financial Services.

George W. Ledford, Chapter 13 Trustee, Englewood, OH, pro se.

Robert O'Neal, Dayton, OH, for Progressive Ins. Co.

Beverly F. Schmaltz, Dayton, OH, for James Lee Hill.

*CORRECTED DECISION ON ORDER DENYING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT FIDELITY FINANCIAL SERVICES (DOC. 6–1) AND GRANTING MOTION BY PLAINTIFF, CHAPTER 13 TRUSTEE, FOR SUMMARY JUDGMENT AGAINST DEFENDANT FIDELITY FINANCIAL SERVICES AND IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT FILED BY FIDELITY FINANCIAL SERVICES (DOC. 19–1)*

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order Of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters affecting the administration of the estate, (B)—allowance or disallowance of claims, (E)—orders to turn over property of the estate, and (O)—other proceedings affecting the administration of the estate.

Pending before the court are the motions for summary judgment filed by the plaintiff (Doc. 19–1) and the defendant, Fidelity Financial Services (Doc. 6–1). Each party requests that the court find that it is the party entitled to casualty insurance proceeds from the destruction of the debtor's automobile. The Trustee also requests that the defendant be found in violation of the automatic stay, that he be granted turnover of the insurance proceeds with interest and costs, that he be awarded sanctions, and that a hearing be held to determine damages as a result of the defendant's violation of the automatic stay.

## FACTS

The plaintiff, George W. Ledford, Chapter 13 Trustee, (the "Trustee") and the defendant, Fidelity Financial Services, ("Fidelity") filed an Agreed Statement Of Facts And Exhibits Between Plaintiff And Defendant Fidelity Financial Services (Doc. 15–1) which provides in pertinent part:

1. On June 10, 1992, the debtor obtained a loan of $20,050 from Fidelity consisting of $9,278.09 of new credit and $10,721.91 of prior credit and granted Fidelity a security interest in a 1992 Buick Park Avenue Ultra (the "Buick").

2. The debtor obtained insurance from Progressive Insurance Company ("Progressive") covering the automobile (the "Insurance Policy"). Fidelity is the loss payee on the policy known as Policy ss–9222–375–0.

3. On June 30, 1992, Fidelity recorded its security interest in the automobile.

4. On July 7, 1992, the debtor filed a chapter 13 bankruptcy petition.

5. On September 14, 1992, Fidelity filed a proof of claim as a secured creditor for $19,729.07.

6. On October 21, 1992, debtor filed a preference action, Adversary No. 3–92–0322, to avoid Fidelity's security interest.

7. On April 1, 1993, an Agreed Order of Compromise and Settlement (the "Compromise Agreement") signed by the debtor, the Trustee, and Fidelity was entered. The Compromise Agreement provided that Fidelity would be paid 59% of its claim, or $11,640.15, and that Fidelity would retain its lien until completion of the debtor's

plan, at which time the lien would be released. (Doc. 7–1, Adv. No. 3–93–0022).

8. Under the debtor's Chapter 13 plan, all unsecured creditors receive 59% of their unsecured obligations.

9. On November 7, 1993, the vehicle was rendered a total economic loss in an accident.

10. On or about November 22, 1993, Progressive paid insurance proceeds totalling $18,350.00 to Fidelity.

11. The Trustee has paid to Fidelity $7,070.81 of the $11,640.15 amount specified in the terms of the Compromise Agreement.

Further, based upon the Trustee's affidavit, the court also finds that: 1) the Trustee made an initial written demand on Fidelity through its attorney Steve Katchman on February 3, 1994, 2) that the Trustee received a telephone call from another attorney representing Fidelity in which she refused on behalf of Fidelity to turn over the funds, and 3) that the Trustee had "further telephone conversations with Katchman in an attempt to have the proceeds turned over." (Doc. 19–1, affidavit of George Ledford).

### DISCUSSION

In its motion for summary judgment, Fidelity asserts that the insurance proceeds are not property of the debtor's chapter 13 estate.[1] The Trustees' motion for summary judgment (Doc. 19–1) asserts that the insurance proceeds are property of the debtor's chapter 13 estate, that the Trustee is entitled to turnover in the amount of $18,350.00 with interest from November 18, 1993[2] and costs, that the court enter sanctions against Fidelity, that Fidelity has willfully violated the automatic stay by exercising control over these funds, and that a separate hearing be held to determine damages against Fidelity for violating the automatic stay.

1. Fidelity also filed a Reply Memorandum In Support Of Defendant's Motion For Summary Judgment And In Opposition To Plaintiff's Motion For Summary Judgment (Doc. 20–1).

2. The court is unsure as to the reason why the Trustee has chosen this date.

Fed.R.Bankr.P. 7056(c) incorporates Fed.R.Civ.P. 56(c), pertaining to summary judgment and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

No material issues of fact exist. Therefore, this proceeding may be appropriately determined pursuant to summary judgment.

### A. DETERMINATION OF OWNERSHIP OF THE INSURANCE PROCEEDS

Section 541(a) of the Bankruptcy Code provides that:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) . : . all legal or equitable interests of the debtor in property as of the commencement of the case.

Section 1306(a)(1) provides that, in addition to the property specified under § 541, property of the estate includes:

[A]ll property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first[.]

Fidelity does not dispute that the debtor's Buick and the Insurance Policy became property of the debtor's chapter 13 estate.[3] Fidelity does dispute, however, that the proceeds from the Insurance Policy are property of the debtor's estate.

It is well settled that ownership of an insurance policy that is property of a debtor's estate does not necessarily result in a determination that the debtor's estate owns the

3. The court notes that the debtor's property did not revest upon confirmation, as the confirmation order provides "that all property shall remain property of the estate and shall vest in the debtor only upon dismissal, discharge or conversion." (Est. Doc. 10–1).

proceeds from a policy. *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir.1993); *Louisiana World Exposition, Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1399 (5th Cir.1987). Several courts have found, however, that casualty insurance proceeds from the destruction of property of a chapter 13 debtor's estate are property of the debtor's chapter 13 estate. *Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512, 515 (2d Cir.1985); *Bartholow v. Calder (In re Calder)*, 171 B.R. 36 (Bankr.N.D.Tex.1994); *Woods v. John Fox Oldsmobile, Inc. (In re Woods)*, 97 B.R. 850, 851–52 (Bankr.W.D.Va. 1989). *See also In re Arkell*, 165 B.R. 432, 435 (Bankr.M.D.Tenn.1994). In *Bradt*, the court found that the debtor's ownership of his automobile made that automobile property of the debtor's estate and stated:

> Further, section 541(a)(6) includes as property of the estate "[p]roceeds, product, offspring, rents, and profits of or from property of the estate." 11 U.S.C. § 541(a)(6).... Proceeds is "intended to be a broad term to encompass all proceeds of property of the estate. The conversion in form of property does not change its character as property of the estate." Thus, [an] insurance payment for repairs to an automobile that is property of the estate unquestionably is also property of the estate.

*Bradt*, 757 F.2d at 515 (citations omitted). *See generally*, Lundin, *Chapter 13 Bankruptcy*, para. § 6.19, pp. 6–67–69 (1994).

■ Fidelity asserts that these decisions are not determinative, as the weight of authority demonstrates that the insurance proceeds are not property of the estate; rather, the insurance proceeds belong to Fidelity. In support of its position, Fidelity cites several cases; however, the cases cited by Fidelity are factually inapposite. These cases do exemplify, however, that the issue of whether proceeds are property of a debtor's estate is not simple, but is dependent upon the nature of the policy and the specific provisions governing the parties' interests in the payment of policy proceeds. In each of the cases cited by Fidelity the debtor did not possess any primary or shared interest in the proceeds whatsoever. *Louisiana World Exposition, Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391 (5th Cir. 1987) involved the issue of whether liability proceeds payable to officers and directors, the only named insureds, were property of the debtor corporation's estate. The Fifth Circuit specifically held that the debtor corporation, which was not a named insured, had no interest in the liability proceeds; and, therefore, the proceeds were not property of the estate. *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir.1993) involved proceeds from a debtor's medical malpractice liability policy. The court stated that the "overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." *Id.* at 55. The court concluded that the debtor would not have a right to receive and keep the proceeds when the insurer paid on the claim; and, thus, the proceeds were not property of the estate. The Third Circuit's decision in *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir.1993) involved a credit life insurance policy. As security for the debtor's loan for a truck, the debtor purchased a credit life insurance policy naming the bank as primary beneficiary and the debtor's estate as the secondary beneficiary. The court noted that, although the debtor owned the credit life insurance policy, the bank and not the debtor was the primary beneficiary. Accordingly, the bank's interest in the proceeds of the policy was not property of the estate; and, therefore, could not be altered by the confirmation of the debtor's chapter 13 plan. In *In re Goodenow*, 157 B.R. 724 (Bankr.D.Maine 1993) the court followed *Edgeworth* and *McAteer* and concluded that, because the debtor's disability insurance policy named General Motors Acceptance Corporation as primary beneficiary and the insurance proceeds were directly payable to General Motors Acceptance Corporation, the debtor's estate had no interest in the proceeds. In *Westchester Enters., Inc. v. Swartwout (In re Swartwout)*, 123 B.R. 794 (Bankr.S.D.Ohio 1991), the insured and the beneficiary transferred their interest in life insurance policies and their proceeds to des-

ignated creditors pursuant to assignments executed prior to their bankruptcy filing. Under these facts the court concluded that neither the policies nor the proceeds became part of the bankruptcy estate. Lastly, Fidelity cites *Marine Office of America Corp., a Division of Continental Ins. Co. v. Radloff (In re Offshore Carrier and Liner Service, Inc.),* 82 B.R. 504 (Bankr.E.D.Mo.1988).[4] Here, the debtor chartered a barge which sank. The barge owner sought to recover the proceeds of an insurance policy procured by the debtor pursuant to the charter agreement. The policy named the barge owner as loss payee. The policy provided for coverage of the value as agreed between the barge owner and the debtor charterer. Notwithstanding, the debtor asserted a right to all proceeds of the policy in excess of the fair market value of the vessel. The court held that because the owner was named as loss payee, the debtor's interest was no greater than any proceeds remaining after the loss payee received the agreed value of the insured property.

■  In this proceeding, the insurance policy provides that any loss as a result of damage to the car is "payable as interest may appear to named insured [the debtor] and above loss payee [Fidelity]." (Doc. 15–1, Ex. J–2). Under the specific terms of this policy, Fidelity is neither the primary nor the sole beneficiary of the proceeds. The provisions of the insurance contract give an interest in any proceeds to both the debtor and to Fidelity. Although these respective interests would ordinarily be governed by applicable non-bankruptcy law, as a result of the debtor filing bankruptcy these respective interests are governed by the order (Doc. 10–1) confirming the debtor's chapter 13 plan. In this case, however, there is a document of even greater significance. In a related proceeding, Fidelity Financial Services v. George W. Ledford, Chapter 13 Trustee and James Lee Hill, counsel for Fidelity, Adversary No. 3–

93–022, the Chapter 13 Trustee and counsel for the debtor entered into an Agreed Order Of Compromise And Settlement on April 1, 1993. (Doc. 7–1).

The court need not speculate why the parties reached this particular resolution of their respective claims; however, the parties to the agreement are bound by the clear provisions of this Agreed Order (Doc. 7–1, Adv. No. 93–0022).[5] The Agreed Order provides "that Fidelity Financial Services shall have an allowed claim in the amount of $19,729.07 to be paid 59% and such claim shall be paid prior to all other unsecured, Class 5 claims." (Doc. 19–1, p. 6). The Trustee has paid to Fidelity $7,070.81 of the $11,640.15 pursuant to this Agreed Order. Thus, Fidelity's "interest" is currently $4,569.34 to be paid pursuant to the terms of the debtor's chapter 13 plan. Accordingly, the Trustee is entitled to turnover of the proceeds in the amount of $18,350.00.

■  The Trustee also requests that he be awarded interest on this amount. On numerous occasions this court has awarded pre-judgment interest under 28 U.S.C. § 1961(a) from the initial date of demand in circumstances where a party has retained property of a debtor's estate to which it is not rightfully entitled. *See e.g., Sprowl v. Miami Valley Broadcasting Corp. (In re Federated Marketing, Inc.),* 123 B.R. 265, 271 (Bankr. S.D.Ohio 1991); *Foreman Indus., Inc. v. Broadway Sand & Gravel (In re Foreman Indus., Inc.),* 59 B.R. 145, 154–57 (Bankr. S.D.Ohio 1986); *Brock v. Barlow (In re Barlow),* 58 B.R. 797, 810 (Bankr.S.D.Ohio 1986).

As a result of this court's finding that the insurance proceeds are property of the estate, the Trustee is also entitled to interest pursuant to 28 U.S.C. § 1961(a) from the date of his initial demand on Fidelity, February 3, 1994. The Trustee is also entitled to the costs of filing this proceeding.

---

**4.** Fidelity also cites *Polysat, Inc. v. Union Tank Car Co. (In re Polysat, Inc.),* 152 B.R. 886 (Bankr. E.D.Pa.1993). This case does not involve the issue present in this case, but merely cites to *McAteer* for the proposition that a "creditor may recover the full amount of the original obligation from the debtor's insurer rather than the smaller

'cram down' amount provided in the debtor's confirmed chapter 13 plan notwithstanding the discharge." *Id.* at 894.

**5.** Fidelity states that it is not attempting to relitigate its claim. (Doc. 20–1, p. 7).

## B. DETERMINATION OF THE EXTENT OF THE AUTOMATIC STAY

■ The automatic stay prevents any action to exercise control over property of a debtor's estate. 11 U.S.C. § 362(a)(3).

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir.1989) (quoting *INSLAW, Inc. v. United States (In re INSLAW, Inc.),* 83 B.R. 89, 165 (Bankr.D.D.C.1988)). *See also Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 482 (9th Cir.1989); *Smith v. GTE North Inc. (In re Smith),* 170 B.R. 111 (Bankr.N.D.Ohio 1994).

■ Having determined that the casualty insurance proceeds are property of the debtor's chapter 13 estate, the court finds that Fidelity has violated the automatic stay by exercising control over these funds. Further, based upon the facts in this proceeding the violation was willful. Despite Fidelity's knowledge that the insurance contract provided for payment to the respective interests of Fidelity and the debtor, Fidelity's knowledge that its claim was governed by the debtor's confirmed chapter 13 plan, and Fidelity's knowledge that it had entered into an agreed order in the debtor's case, Fidelity retained the proceeds. Fidelity intentionally retained the insurance proceeds after the Trustee made repeated demands claiming that the proceeds belonged to the estate and were to be turned over to the Trustee. If a creditor believes that it is entitled to property disputed to be property of a debtor's estate, the Code requires a judicial determination of the relative rights of the parties with respect to the funds and an immediate order from the bankruptcy court modifying or conditioning the stay until the issue can be determined. *Homan v. Kemba Cincinnati Credit Union (In re Homan),* 116 B.R. 595, 605 (Bankr.S.D.Ohio 1990). *Accord B.F. Goodrich Employees Fed. Credit Union v. Patterson (In re Patterson),* 967 F.2d 505 (11th Cir.1992). *See also Citizens Bank of Maryland v. Strumpf (In re Strumpf),* 37 F.3d 155 (4th Cir.1994). Fidelity failed to take advantage of any of these opportunities for a judicial determination of its claims; and, through its self determination of the issues of "property of the estate" and "extent of the stay" willfully violated the automatic stay.

Accordingly, the Motion For Summary Judgment Of Defendant Fidelity Financial Services (Doc. 6–1) is **DENIED.** The Motion By Plaintiff, Chapter 13 Trustee, For Summary Judgment Against Defendant Fidelity Financial Services And In Opposition To Motion For Summary Judgment Filed By Fidelity Financial Services (Doc. 19–1) is **GRANTED. IT IS DETERMINED** that the casualty insurance proceeds paid from Progressive Insurance Company to Fidelity are property of the debtor's chapter 13 estate, that the Trustee is entitled to turn over of the $18,-350.00 in casualty insurance proceeds with interest under 28 U.S.C. § 1961(a) from February 3, 1994 and the costs of this action, and that Fidelity Financial Services has willfully violated the automatic stay under 11 U.S.C. § 362(a).

A separate order scheduling a hearing concerning damages and sanctions for Fidelity Financial Service's violation of the automatic stay has been entered.