In re Charles Richard HOFFMEISTER, and Colleen Carol Hoffmeister, Debtors/Appellants.

No. 95–4088–SAC.

Bankruptcy No. 93–40132–13.

United States District Court, D. Kansas.

Jan. 24, 1996.

Lynn D. Lauver, Topeka, KS, for Debtors–Appellants.

Ruth E. Graham, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, Thomas A. Valentine, Thomas A. Valentine, P.A., Topeka, KS, for Super Chief Credit Union.

William H. Griffin, Trustee, Topeka, KS.

## MEMORANDUM AND ORDER

CROW, District Judge.

The debtors, Charles and Colleen Hoffmeister (Hoffmeisters), appeal the order entered May 23, 1995, in which the bankruptcy court found that the balance of insurance proceeds paid for hail damage on the Hoffmeisters' car was "nonexempt property that must be distributed to creditors in accordance with the debtors' confirmed chapter 13 plan." (Dk. 2 at 41). Having claimed the car as exempt without any objections, the Hoffmeisters argue that the proceeds paid for the damage done to their car after the confirmation of their Chapter 13 plan also must be exempt.

## FACTS

The parties have no dispute over the relevant facts.

On January 29, 1993, the Hoffmeisters filed a voluntary Chapter 13 petition, the debtors' plan, and schedules. On their Schedule C, "Property Claimed as Exempt," the Hoffmeisters listed a 1988 Chevrolet Beretta with a value of $2,600. (Dk. 2 at 2). On their Schedule D, "Creditors Holding Secured Claims," the Hoffmeisters listed Super Chief Credit Union ("Super Chief") with an $8,000 lien against the 1988 Beretta. (Dk. 2 at 2). The debtors' plan called for Super Chief to receive a $2,600 secured claim for the value of the 1988 Beretta and to have the remaining debt treated as a general unsecured claim. (Dk. 2 at 2). Consequently, when the Hoffmeisters claimed the 1988 Beretta as exempt property, they had no equity in it.

Super Chief filed a proof of claim asserting a security interest in the 1988 Beretta and other personal property totaling $5,482.52, and an unsecured claim of $2,063.75. (Dk. 2 at 3). In an agreed order of valuation, the bankruptcy court found that Super Chief had a perfected security interest in the 1988 Beretta, that this car was valued at $2,600, and that the debtors would pay Super Chief on its secured claim the sum of $2,600 plus interest through the plan. (Dk. 2 at 12). The bankruptcy court confirmed the debtors' Chapter 13 plan on April 6, 1993. (Dk. 2 at 11).

In 1994, while the Hoffmeisters were still making payments under their Chapter 13 plan, a hailstorm damaged the 1988 Beretta. The insurance company issued a check in the amount of $1,101.36, payable to both the Hoffmeisters, as the insureds, and Super Chief, as the lienholder.

On April 3, 1995, the Hoffmeisters filed in bankruptcy court a "Motion to Determine Distribution of Proceeds of Exempt Property." (Dk. 2 at 30). In their motion, the Hoffmeisters said they had proposed to Super Chief that the insurance proceeds be used to pay first the remainder of Super Chief's secured claim with the balance of the proceeds going to the debtors to pay their federal taxes. The Hoffmeisters also said that Super Chief had rejected their proposal and insisted the proceeds should go to the Chapter 13 trustee for distribution first to Super Chief on its secured claim and the balance going to the unsecured general creditors. By their motion, the Hoffmeisters asked the bankruptcy court to distribute the proceeds as they had proposed to Super Chief.

On April 11, 1995, the bankruptcy court heard the debtors' motion. The trustee represented that the debtors owed $338.56 to Super Chief on the secured claim. (Dk. 3 at 2). The debtors' attorney argued that because the insurance check paid for damages to exempt property, the check was exempt proceeds. (Dk. 3 at 3). The bankruptcy court opined that the proceeds were exempt only if the debtor intended to use them towards the repair of the exempt car; otherwise, the balance of the proceeds should be paid to the estate for distribution. (Dk. 3 at 9–10). The bankruptcy court then allowed the debtors five days to submit any authority for their position. (Dk. 3 at 10).

The debtors' supplemental brief first cited K.S.A. 60–2304 as the Kansas law governing exemptions. Then citing two federal court decisions, the debtors argued that exempt property revests in them and does not remain property of the estate. Accordingly, the debtors took the position that the 1988 Beretta became their exempt property after the time for filing objections to their claimed exemptions had expired. The debtors' also premised their position on the argument that exemptions are not lost by subsequent sale, because it is the value and not the particular item that is exempt. In sum, the debtors argued that they exempted their interest in the car, that their exempted interest was partially converted to money upon payment for the hail damage, and that their entire interest remains exempted regardless of its conversion to money or not.

On May 22, 1995, the bankruptcy court ruled from the bench that the insurance policy was part of the estate under 11 U.S.C. § 541 and that the insurance proceeds paid for damage to exempt property are exempt if used to restore the exempt property or if

otherwise put back into the same kind of exempt property. The bankruptcy court journalized its bench ruling writing in part: "Based on the authorities and reasoning stated at the hearing, the Court hereby declares that since the debtors have indicated they do not intend to use the money to repair their car, the balance of insurance proceeds are nonexempt property that must be distributed to creditors in accordance with the debtors' confirmed chapter 13 plan." (Dk. 2 at 41). The insurance check was given to the trustee who was to pay Super Chief on its secured claim and to distribute the balance as the Chapter 13 plan provided. According to the statement of the case found in the appellants' brief, the trustee paid Super Chief on its secured claim and is holding the balance pending the outcome of the appeal. The appellee in its brief adopted the appellants' statement of the case.

## STANDARD OF REVIEW

The district court sits as an appellate court in this proceeding. *See* Bankruptcy Rule 8013. The bankruptcy court's legal determinations are reviewed de novo. *In re Raymond,* 987 F.2d 675, 676 (10th Cir.1993).

## APPELLANTS' ARGUMENTS

The premise to the Hoffmeister's arguments first made to the bankruptcy court and now advanced on appeal is that exempt property revests in the debtor and does not remain property of the estate. For their authority, the Hoffmeisters cite *In re Patterson,* 825 F.2d 1140 (7th Cir.1987); *Seifert v. Selby,* 125 B.R. 174 (E.D.Mich.1989); *In re Halbert,* 146 B.R. 185 (Bankr.W.D.Tex.1992). The Hoffmeisters argue that the bankruptcy court confused Kansas law on exempt property treatment with general federal bankruptcy law. The Hoffmeisters also contend that the bankruptcy court may not require them to give the proceeds from exempt property to the trustee for distribution to unsecured creditors. They base this last contention on the similar premise that insurance proceeds are simply another form of the exempt property which remain exempt for the entire bankruptcy process.

## DISCUSSION

While the Hoffmeisters may believe the present dispute is due to the bankruptcy court's confusion of state and federal law, this court attributes the Hoffmeisters' dispute with the bankruptcy court's ruling to their own confusion of Chapter 7 bankruptcy law with Chapter 13 bankruptcy law.[1] All three cases cited by the Hoffmeisters on the effect of their claimed exemption, *Patterson, Halbert* and *Seifert,* are Title 7 bankruptcy cases. These cases recognize that exempt property becomes part of the bankruptcy estate upon filing the bankruptcy petition, and the debtor must take measures to remove the exempt property from the estate. *Patterson,* 825 F.2d at 1143. A debtor may claim certain property as exempt, 11 U.S.C. § 522(b), and if no interested party objects, then the claimed property is exempted and is no longer property of the estate but revests in the debtor. *Halbert,* 146 B.R. at 188; *Seifert,* 125 B.R. at 175–76. Because there were no objections filed to their claimed exemption of the 1988 Beretta, the Hoffmeisters maintain the car was removed from the bankruptcy estate and revested in them.

---

1. Recently, a bankruptcy court explained the different role that exemptions have under Chapter 7 and Chapter 13:

   "The Court does not dispute the Debtor's contention that exemptions apply in both Chapter 7 and Chapter 13. *See* 11 U.S.C. § 103(a). However, their significance is greatly diminished in a Chapter 13, where the fresh start is protected by the debtor's retention of nondisposable income, rather than by exempt assets. *See Collier, supra,* ¶ 1300.81. Legislative history indicates that in a liquidation exemptions are meant to 'protect a debtor from his creditors, to provide him with basic necessities of life so that even if his creditors levy on all of

   his nonexempt property, the debtor will not be left destitute and a public charge.' (citations omitted). A Chapter 13 debtor, on the other hand, may keep all its assets, exempt or not, in return for repayment of creditors out of future income. Where the Debtor is assured of an income sufficient to meet his basic needs, his fresh start is not imperiled by requiring him to make payments to creditors out of his social security and pension benefits, especially where, as here, it is those benefits that he proposes to use to fund his plan."
   *In re Schnabel,* 153 B.R. 809, 817 (Bankr.N.D.Ill. 1993); *see, e.g., In re Reed,* 184 B.R. 733, 738 (Bankr.W.D.Tex.1995).

The Hoffmeisters reliance on these arguments and authorities, however, is misplaced.

■ Among the statutory provisions governing Chapter 13 proceedings is one that specifies the effects of confirmation:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

11 U.S.C. § 1327. The order that confirms the Hoffmeisters' plan specifically provides that estate property does not revest in the debtors until an event subsequent to confirmation occurs:

8. All property of the estate, including any income earnings or other property which may become a part of the estate during the administration of the case which property is not proposed, or reasonably contemplated, to be distributable to claimants under the plan shall revest in the debtor(s); provided, however, that no property received by the Trustee for the purpose of distribution under the plan shall revest in the debtor except to the extent that such property may be in excess of the amount needed to pay in full all allowed claims as provided by the plan.

**Such property as may revest in the debtor(s) shall so revest upon the approval by the Court of the Trustee's Final Report and Account.**

(Dk. 2 at 11) (emphasis added). Consequently, none of the property from the Hoffmeisters' estate revests until the bankruptcy court approves the trustee's final report and account.

■ The trustee's final report on Chapter 13 cases is due after the debtors complete all payments under the plan, receive a hardship discharge, or have their case dismissed or converted. *See Handbook for Chapter 13*

*Standing Trustees,* U.S. Dept. of Justice at 23 (1990) (citing 11 U.S.C. §§ 1302(b)(1) and 704(9)). The record on appeal does not show that the bankruptcy court has approved a final report or that the final report is even due from the trustee. Accordingly, the Hoffmeisters' 1988 Beretta became property of their chapter 13 estate, and it will not revest in them until the bankruptcy court approves the trustee's final report and account. *See* 2 Keith M. Lundin, *Chapter 13 Bankruptcy Second Edition,* § 6.16 at 6–57 (1994); *see, e.g., In re John,* No. 94–40649, 1995 WL 448929 (Bankr.S.D.Ga. Jul. 24, 1995); *In re Hill,* 174 B.R. 949, 951 n. 3 (Bankr.S.D.Ohio 1994). Since neither their arguments nor their authorities demonstrate that the 1988 Beretta was outside the Chapter 13 estate when its value was partially converted to insurance proceeds, the debtors are without a premise for their position that the proceeds never became part of estate.

Property of the estate is defined in 11 U.S.C. § 541(a)(1) to include "all legal or equitable interests of the debtor in property as of the commencement of the case." Under Chapter 13 proceedings, the definition of property reaches that which the "debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1); *see In re Rivera,* 186 B.R. 505, 507 (D.Kan.1995).

■ The court finds that the insurance proceeds here are part of the bankruptcy for either of two reasons. First, the Hoffmeisters' insurance policies are property of the estate, and because the debtors have an apparent shared interest in the proceeds payable on the automobile insurance,[2] the proceeds are also part of the estate. *See Matter of Edgeworth,* 993 F.2d 51, 55–56 (5th Cir. 1993); *In re Hill,* 174 B.R. 949, 952–53 (Bankr.S.D.Ohio 1994). Second, numerous cases have held that if the debtor's property was part of the Chapter 13 estate, then the casualty or hazard insurance proceeds paid for damage to the same property are proceeds from that property and, thus, are also part of the estate. *See In re Asay,* 184 B.R.

---

**2.** The insurance policy is not part of the record on appeal. The court infers the Hoffmeisters' shared interest in insurance proceeds from the fact that the insurance company issued the check payable to them and Super Chief.

265, 266 (Bankr.N.D.Tex.1995); *In re Jones,* 179 B.R. 450, 454 (Bankr.E.D.Pa.1995); *In re Hill,* 174 B.R. at 952; *In re Arkell,* 165 B.R. 432, 435 (Bankr.M.D.Tenn.1994) (and cases cited in each). "[T]he insurance payment for repairs to an automobile that is property of the estate unquestionably is also property of the estate." *Bradt v. Woodlawn Auto Workers, F.C.U.,* 757 F.2d 512, 515 (2nd Cir.1985).

▮ The court believes it has decided the appeal on the limited issues that have been raised. All of the debtors' arguments are premised on the erroneous proposition that neither the 1988 Beretta nor the insurance proceeds for the hail damage are property of the Chapter 13 estate. Though the facts to this appeal suggest other possible issues, the Hoffmeisters have not preserved them for appeal.[3]

IT IS THEREFORE ORDERED that the bankruptcy court's order entered May 23, 1995, is affirmed.

---

**3.** The debtors do not challenge the bankruptcy court's interpretation of Kansas law that proceeds from exempt property are not exempt unless used to repair, preserve, or buy exempt property. Nor did the debtors argue below or plainly on appeal that the remaining insurance proceeds were not disposable income. *Compare In re Moore,* 188 B.R. 671, 675–76 (Bankr.D.Idaho 1995) *with In re Boothe,* 167 B.R. 943, 944–45 (Bankr.D.Colo.1994). The general rule is that a court does not pass on issues or arguments which are raised for the first time on appeal. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Settles v. Golden Rule Ins. Co.,* 927 F.2d 505, 508 n. 2 (10th Cir.1991); *Hutchins v. Commonwealth Mortg. Corp.,* 165 B.R. 401, 405 (E.D.Pa.1994). The exceptions articulated in *Singleton* do not appear to apply; nor is this case one which warrants the appellate court ignoring this rule and the important interests behind it.