**In re David H. FURGESON, June M. Furgeson, Debtors.**

**In re Kenneth A. Carson, Sr., Florence E. Carson, Debtors.**

Nos. 99–64888, 00–60267.

United States Bankruptcy Court, N.D. New York.

March 22, 2001.

Selbach & Viencek, L.L.P., Attorneys for Debtors, Syracuse, James F. Selbach, Of Counsel.

Lynn Harper Wilson, Syracuse, Staff Attorney to Chapter 13 Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The Court herein considers settlement motions made in two separate cases whose facts and procedural posture are substantively the same. In the first case, *In re David H. and June M. Furgeson,* Ch. 13 Case No. 99–64888, the Furgesons seek approval of the settlement of their claim against an estate creditor as a result of that creditor's alleged willful violation of the stay. In the second case. *In re Kenneth A., Sr. and Florence E. Carson,* Ch. 13 Case No. 00–60267 the Carsons seek approval of the settlement of their claim arising from a creditor's alleged contempt of an existing order of this Court finding that creditor willfully violated the automatic stay.

On March 22, 2000, the Debtors David H. Furgeson and June M. Furgeson (collectively "Furgesons") filed a motion pursuant to Section 362(h) ("Furgeson § 362(h) Motion") of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code") against creditor Otsego County Department of Social Services ("Otsego") seeking damages and attorneys' fees in unspecified amounts alleging that Otsego willfully violated the automatic stay.[1]  *See* Code § 362(h). Currently before the Court in

---

1. The automatic stay provision in Code § 362 serves to alleviate debtors in bankruptcy of the burdens associated with debt collection activity as of the date of the filing of the bankruptcy petition through the pendency of the debtor's bankruptcy case. *See* Code § 362(a). Code § 362(h) provides an avenue of redress to debtors against estate creditors

the *Furgeson* case is the Furgesons' September 11, 2000 Motion to Approve Settlement ("Furgeson Settlement Motion") of said claims in the aggregate sum of $5,800; $2,280 to be paid to the Furgesons' attorneys pursuant to a contingency fee arrangement with the balance of $3,520 to be paid directly to the Furgesons.

On August 23, 2000 the Debtors Kenneth A. Carson, Sr. and Florence E. Carson (collectively "Carsons") filed a motion pursuant to Federal Rule of Bankruptcy Procedure 9020(b) ("Carson Contempt Motion") seeking to hold estate creditor Lincare, Inc., Region 2 ("Lincare") in civil contempt for failing to comply with the July 12, 2000 Order and Judgment of this Court finding Lincare in willful violation of the automatic stay and awarding the Carsons damages and attorneys' fees in the sum of $3,000 plus interest ("Carson § 362(h) Order"). The relief sought in Carson Contempt Motion consists of a $10,000 sanction against Lincare and $500 per day for each day Lincare allegedly fails to comply with the Carson § 362(h) Order. Currently before the Court in the *Carson* case is the Carsons' October 12, 2000 Motion to Approve Settlement ("Carson Settlement Motion") of both the Carson Contempt Motion and the Carson § 362(h) Order in the aggregate sum of $3,500; $2,100 to be paid to the Carsons' attorneys with the balance of $1,400 to be paid directly to the Carsons.

The Chapter 13 Trustee ("Trustee") filed an Affidavit in Opposition ("Trustee's Opposition")[2] to the proposed settlement in the *Furgeson* case on October 4, 2000, and in the *Carson* case on November 7, 2000, wherein the Trustee objects in both instances to the settlement funds being paid directly to the respective Debtors rather than being distributed to their creditors through their confirmed individual debt adjustment plans (the "Furgeson Plan" and "Carson Plan," respectively). The Trustee also objects to the allegedly "excessive" attorneys' fees sought in each case. *See* Trustee's Opposition, at ¶ 4. Limited oral argument in the *Furgeson* case was heard at the Court's regular motion term held in Utica, New York on October 10, 2000, at which time the parties were afforded the opportunity to submit supplemental memoranda of law.

Additionally, on October 27, 2000, the Trustee filed a motion pursuant to Code § 1329(a) to Modify the Furgeson Plan ("Motion to Modify") seeking to distribute the settlement proceeds to creditors through the Furgeson Plan. The Furgesons filed an Affirmation in Opposition to the Trustee's Motion to Modify on November 7, 2000, along with Memorandum of Law ("Furgeson Memo") both supporting the Furgesons' Settlement Motion and opposing the Trustee's Motion to Modify. On November 13, 2000, the Trustee submitted a Memorandum of Law supporting both his objection to settlement and his Motion to Modify ("Trustee's Memo").

At the Court's regular motion term held in Utica, New York on November 14, 2000, the parties consented to consolidate oral argument in both the *Furgeson* and *Carson* cases given the similarity of the legal

---

who willfully violate that protection. *See* Code § 362(h). Specifically, Code § 362(h) provides, in its entirety, that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Code § 362(h).

2. The substantive paragraphs of the Trustee's Affidavits in Opposition in both the *Carson* and the *Furgeson* cases are nearly identical. For the sake of clarity, the Court will refer singularly to the "Trustee's Opposition" when referring to the Trustee's Affidavit in Opposition in both cases.

and factual issues presented in the cases. Following oral argument on that date, the matters were submitted for written decision.

## JURISDICTION

The Court has core jurisdiction over the parties and the subject matter of these contested matters pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a), (b)(1) and (b)(2)(A) and (O).

## FACTS

The Furgesons filed for protection under Chapter 7 of the Code on September 7, 1999. Among the creditors holding unsecured non-priority claims scheduled in the Furgesons' case was Otsego for the sum of $4,074.12. On January 14, 2000, the case was converted to one under Chapter 13 on a motion by the Furgesons. On March 23, 2000, this Court entered an Order confirming the Furgesons' Plan ("Furgeson Confirmation Order"). Under the Furgeson Plan, the Furgesons are required to make monthly payments of $120 to the Trustee for sixty months with those creditors holding unsecured non-priority claims receiving a dividend of no less than 5% of their respective claims. Paragraph 12 of the Furgesons' Confirmation Order states in pertinent part "That all property of the estate, including any income, earnings or other property which may become a part of the estate during administration of the case, which property is not proposed or reasonably contemplated to be distributable to claimants under the Plan, shall revest in the Debtor(s)"...Such property as may revest in the Debtor(s) *shall so revest upon the approval of the Court and the Chapter 13 Trustee.* Furgeson Confirmation Order, at ¶ 12 (emphasis added).

On March 22, 2000, the Furgesons filed their § 362(h) Motion seeking damages and attorneys' fees resulting from Otsego's alleged willful violation of the automatic stay. While the specific circumstances surrounding Otsego's alleged conduct is irrelevant to the instant motion, the Court notes that all of the stay violations are alleged to have occurred prior to the entry of the Furgeson Confirmation Order. *See* Furgeson Settlement Motion, Exhibit A. After several consensual adjournments of the pending § 362(h) Motion, the Furgesons filed the instant motion on September 11, 2000, seeking approval of the settlement agreement purporting to settle the Furgesons' claims against Otsego for the sum of $5,800.

The Carsons filed for protection under Chapter 13 of the Code on January 24, 2000. Among the creditors holding unsecured non-priority claims scheduled in the Carsons' case was Lincare for the sum of $270.37. On June 6, 2000 the Carsons filed their § 362(h) Motion against Lincare seeking damages, attorneys' fees and costs in excess of $4,000 as a result of Lincare's alleged willful violation of the automatic stay. On June 29, 2000, this Court entered an Order confirming the Carson Plan ("Carson Confirmation Order"). Under the Carson Plan, the Carsons were required to make monthly payments to the Trustee of $550 for the first two months and $650 per month for the remaining fifty-eight months with those creditors holding unsecured non-priority claims receiving a dividend of no less than 54% of their respective claims. Paragraph 11 of the Carson Confirmation Order contained a provision identical to that found in Paragraph 12 of the Furgeson Confirmation Order. *See* Carson Confirmation Order, at ¶ 11.

After no opposition to the Carson § 362(h) Motion was submitted by Lincare, this Court entered the Carson § 362(h) Order as a default judgment on July 12, 2000, ordering Lincare to pay

damages and attorneys' fees to the Carsons in the amount of $3,000 plus interest. On August 23, 2000, the Carsons filed their Contempt Motion seeking $10,000 in sanctions against Lincare and $500 per day for each day Lincare allegedly fails to comply with the Carson § 362(h) Order.

## ARGUMENTS

At issue in both of the settlement motions pending before the Court is whether the settlement proceeds resulting from this Court's approval of the respective settlement agreements should be paid to the Debtors directly or should properly be paid to the Trustee for distribution to creditors who are receiving only 5% and 54% dividends, respectively. The Trustee contends that since the settlement proceeds are both property of the estate and disposable income, they are properly payable to the Trustee for distribution to creditors through their respective Plans. The Trustee argues that the settlement proceeds are no different than those cases holding that a Chapter 13 debtor's postpetition acquisition of gifts, inheritance or lottery winnings are property of the Chapter 13 estate subject to plan distribution. In addition, the Trustee contends the settlement proceeds are not in the nature of actual damages and as such are additional disposable income. In this regard, the Trustee concedes that if the Debtors had suffered actual damages, i.e. the repossession of an automobile or medically verifiable and/or treatable emotional distress, that reimbursement for those damages should be paid to the Debtors directly. However, the Trustee contends that in this case the Debtors have suffered no actual damages and any settlement proceeds payable directly to the Debtors would result in an unforeseen windfall.

In addition, the Trustee contends that the fees requested by the Debtors' attorney should be denied because the Debtors' attorney has both failed to provide the Court with information relevant to determining if the fees requested are reasonable and because the application for the fees requested fails to comply with the local rules of the Court pertaining to fee applications.

The Debtors contend that characterizing the settlement proceeds as "disposable income" is irrelevant since the funds revested in the Debtors at confirmation and are not property of the estate subject to distribution. Additionally, the Debtors contend that the proceeds arose from the wrongful conduct of a creditor and allowing at least a portion of the proceeds to be distributed back to that very same creditor is inequitable.

Debtors' counsel's response to the Trustee's contention that the fees should be denied as excessive is that the reasonableness of attorneys' fees under Code § 362(h) is not determined by what percentage of the total recovery they constitute. In this regard, the Debtors' attorney contends that his requested percentage of the total recovery is commensurate with the line of cases allowing attorney's to recover up to 62% of the debtor's total recovery.

## DISCUSSION

### I. Property of the Estate

Pursuant to Code § 541, property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Code § 541(a)(1). Legislative history suggests that the Congress intended the scope of § 541 to be broad enough to include causes of action accruing to the debtor and claims by the debtor against third parties. *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204–205, 103 S.Ct. 2309,

2313, 76 L.Ed.2d 515 (1983)("The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad.")(footnote omitted); H.R. REP. No. 95–595, 95th Cong., 1st Sess. 367, 1978 U.S.Code Cong. & Ad.News at p. 5787 (1977)(Code § 541 "will include choses in action and claims by the debtor against others..."). The ambit of property included in a debtor's estate is expanded in the context of Chapter 13. Pursuant to Code § 1306(a), property of a Chapter 13 debtor's estate includes, "in addition to the property specified in [Code] section 541 ...all property...that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7..." Code § 1306(a). It has been held that post-petition causes of action accruing to a debtor and the proceeds derived therefrom are property of the Chapter 13 estate if acquired prior to such time as the case is closed, dismissed or converted. *See generally*, Code § 1306(a); *see also, Cox v. Billy Pounds Motors, Inc. (In re Cox)*, 214 B.R. 635, 649 (Bankr.N.D.Ala.1997)(damages recovered for creditor's post-confirmation violation of automatic stay are property of the estate); *Rivera v. Proctor (In re Rivera)*, 186 B.R. 505, 507 (D.Kan.1995)(debtor's civil rights cause of action arising post-confirmation is property of the estate); *Brown v. U.S. (In re Brown)*, 159 B.R. 1014, 1017 (Bankr.S.D.Ga.1993)(Chapter 13 debtor's claim for post-confirmation damages arising from automatic stay viola-

tions were property of the estate) [3]; *In re Solis*, 137 B.R. 121, 126 (Bankr.S.D.N.Y.1992)("Debtor's claim [for § 362(h) damages] is property of the estate by operation of §§ 541 and 1306."). In the instant case, the Debtors' causes of action arose post-petition and the respective cases have yet to be closed, dismissed or converted. Consequently, if the Court were to rely solely on the provisions of Code § 1306(a), the settlement proceeds derived from the settlement of those causes of action are property of the Debtors' estates.

It is worthy to note, albeit inapplicable to the instant case for reasons discussed *infra*, that the broad stroke of Code § 1306(a) is tempered by the seemingly irreconcilable provisions of Code § 1327(b) which states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Code § 1327(b). The difficulty in reconciling these two provisions is evident in that the vesting of estate property in the debtor at plan confirmation contravenes the inclusion of post-confirmation assets in estate property until the case is closed, dismissed or converted. *See In re Rangel*, 233 B.R. 191, 194 (Bankr. D.Mass.1999). For the purpose of the instant settlement motions, however, such a reconciliation by this Court is not required since the terms of both the Furgeson Confirmation Order and the Carson Confirmation Order aptly accommodate the provi-

**3.** In *Brown v. U.S.*, the debtors' plan was confirmed in June 1986, completed in November 1990 and the case was closed in December 1990. *See Brown*, 159 B.R. at 1016. In February 1993 the debtors reopened their case and in March 1993 the debtors filed an adversary complaint against the IRS for post-confirmation violations of the automatic stay. *See id.; see also.* Code § 362(h). With regard to the debtors § 362(h) claim, the court held that "In this case, the estate acquired a claim against the IRS during the pendency of the case when the alleged violations arose, before the case was closed. The reopening of a bankruptcy case does not change the fact that this potential cause of action constituted property of the estate during the pendency of the underlying case...Accordingly [] the debtor's claim in the present [adversary] case is 'property of the estate'..." *Brown*, 159 B.R. at 1018.

sions of both Code § 1306 and Code § 1327(b).[4] In this vein, the Debtors would have this Court read the terms of their respective Confirmation Orders as "provid[ing] that all property that 'is not proposed or reasonably contemplated to be distributable' under the plan revests in the debtors." Furgeson Memo, at 2, *quoting* Furgeson Confirmation Order, at ¶ 12; *see also* Carson Confirmation Order, ¶ 11 (same). To this end, the Debtors argue that pursuant to the terms of the Confirmation Order, and presumably pursuant to Code § 1327(b), there was an automatic revesting of all property in the Debtors contemporaneous with confirmation. This reading, however, suffers from at least two fatal flaws.

First, the Debtors' reading disregards the qualifications of such revesting outlined in the terms of the Confirmation Orders themselves. A closer reading of the terms of the Confirmation Orders reveals that "[s]uch property as may revest in the Debtor(s) shall so revest *upon the approval of the Court and the Chapter 13 Trustee.*"[5] Ferguson Confirmation Order, at ¶ 12; Carson Confirmation Order, at ¶ 11. No such approval has been sought. The requirement of prior Court and Trustee approval before revesting will occur simply belies the viability of the Debtors' contention that the settlement proceeds automatically revested in the Debtors at confirmation. *See In re Hoffmeister*, 191 B.R. 875, 878 (holding that where the confirmation order specifically

4. For a discussion of the various lines of cases and schools of thought that have emerged in an attempt to reconcile Code § 1306(a) with Code § 1327(b) see *In re Rangel*, 233 B.R. at 194–195 ("Numerous courts have written on this issue and three lines of cases have emerged...[t]he first line holds that property of the estate ceases to exist after confirmation of the plan...[t]he second line of cases holds that the Chapter 13 estate continues after confirmation of the Chapter 13 plan...[and]...[t]he third line of cases holds that all but the property of the estate which a debtor needs to fund the Chapter 13 plan vests in that debtor post-confirmation.") (citations and footnotes omitted) or *Holden v. U.S. (In re Holden)*, 236 B.R. 156, 160–162 (Bankr. D.Vt.1999) ("On one hand, § 1306(a) says that the estate continues to collect property until the case is closed, converted, or dismissed. On the other hand, § 1327(b)(2) seems to call for the termination of the estate upon plan confirmation...The two sections, in effect, seem mutually exclusive...Four distinct lines of cases have emerged...[under][t]he first line of cases...[t]he confirmation order is deemed to terminate the estate, and all property that had been property of the estate revests in the Debtor...[t]he second line...holds that all property acquired by a debtor from the petition date through conversion, dismissal, or closure of the case becomes and remains property of the estate...[t]he third line of cases holds that upon

confirmation, all property except that property needed to fund the Chapter 13 Plan revests in a debtor under § 1327(b)...[t]he fourth...holds that upon confirmation, all property vests in a debtor under § 1327(b)...[and]... [i]mmediately subsequent to confirmation, the estate begins to be refilled by all property acquired post-confirmation until the case is closed, dismissed, or converted.") (citations and footnotes omitted).

5. The Court notes at oral argument the Debtors' urged the Court to follow the strict language of the Confirmation Orders in determining whether the § 362(h) causes of action and the settlement proceeds derived therefrom revested in the Debtors at confirmation. To this end, the Debtors' counsel argued that "Whether...acquisition of a post-confirmation asset goes to the debtor or to the estate is determined by the confirmation order and is determined by the analysis of 'did this revest in the debtor' ...you look at the confirmation order...we are bound by the confirmation order." Statement by James F. Selbach, Esq., Attorney for the Debtors. Hearing on Furgeson Settlement Motion and Trustee's Motion to Modify, *In re Furgeson*, Ch. 13 Case No. 99–64888 (Bankr.N.D.N.Y. November 14, 2000, Gerling, C.J.), Hearing on Carson Settlement Motion, *In re Carson*, Ch. 13 Case No. 00–60267 (Bankr.N.D.N.Y. November 14, 2000, Gerling, C.J.).

provides that estate property will revest in the debtor only after court approval of the trustee's final report, that no automatic revesting occurs).[6]

The second flaw in the Debtors' argument is that it seems to ignore Code § 1327(b) which provides in its entirety that *"[e]xcept as otherwise provided in the plan or the order confirming the plan,* the confirmation of a plan vests all of the property of the estate in the debtor." Code § 1327(b)(emphasis added). As outlined in the immediately preceding discussion, the Debtors' Confirmation Orders provide for something other than the automatic revesting suggested in Code § 1327(b), namely, prior approval of such revesting by the Court and the Trustee. As such, there can be no revesting of estate property in the Debtors without approval of this Court and the Trustee. As contemplated under Code § 1327(b), the Debtors' Confirmation Orders "otherwise provided" for the revesting of estate property, and as such, revesting could not have automatically occurred at confirmation as the Debtors suggest.[7] *See* Code § 1327(b); *see also, In re Hoffmeister, supra,* 191 B.R. at 878; *but cf., In re McCray,* 172 B.R. 154, 156 (Bankr.S.D.Ga. 1994)(post-confirmation tax refund was not property of estate since confirmation effected a revesting of such property).[8]

## II.  Modification of the Furgeson Plan

■■■ Pursuant to Code § 1329(a), the Court may, at the request of the Trustee any time subsequent to confirmation but prior to completion of the confirmed plan, modify a debtor's plan to increase or reduce payments to a particular creditor class. *See* Code § 1329(a). "A trustee's application [for plan modification] 'should be limited to situations in which there has been a *substantial change* in the debtor's income or expenses that was *not anticipated* at the time of the confirmation hearing.' "[9] *In re Solis,* 172 B.R. 530, 532

---

**6.**  In *In re Hoffmeister,* cited *supra,* the debtor's confirmation order stated, much akin the Confirmation Order in the instant case, that "Such property as may revest in the debtor(s) shall so revest upon the approval by the Court of the Trustee's Final Report and Account." *In re Hoffmeister,* 191 B.R. at 878. The court determined that the court's approval of the Trustee's Final Report was a condition precedent to the revesting of any property in the debtor and since the Trustee had not filed his Final Report, no revesting had occurred. *See id.*

**7.**  The Court notes that one court in this Circuit, in an attempt to reconcile Code § 1306(a) with Code § 1327(b), has held "that upon confirmation of a Chapter 13 plan, all property of the estate is emptied from the estate and revested in the Debtors under § 1327(b). Such property is no longer property of the estate. Immediately after confirmation, the estate begins to be refilled by property acquired by Debtors post-confirmation. That property is protected by the automatic stay and remains so until the case is closed, converted, or dismissed." *Holden v.*

U.S. *(In re Holden),* 236 B.R. 156, 163 (Bankr. D.Vt.1999) (citations omitted). While it is not necessary for the Court herein to either endorse or reject this theory, the Court nonetheless notes that the *Holden* court did not contemplate language such as that found in the Debtors' Plan requiring Court and Trustee approval before revesting will occur rather, revesting was found to have occurred automatically pursuant to Code § 1327(b).

**8.**  Note, however, that in *In re McCray,* the court stated that § 1327(b) controlled with regard to post-confirmation revesting of property in the debtor, but was silent as to whether the debtor's plan provided for the occurrence of an event as a condition to revesting, as in the instant case. *See In re McCray,* 172 B.R. at 156.

**9.**  The Court acknowledges a competing line of cases holding that Code § 1329 requires no change in circumstances as a threshold requirement to modification. *See in re Studer,* 237 B.R. 189 (Bankr.M.D.Fla.1998), *citing In re Brown,* 219 B.R. 191 (6th Cir. BAP 1998); *In re Powers,* 140 B.R. 476 (Bankr.N.D.Ill.

(Bankr.S.D.N.Y.1994), *quoting* 5 L. KING, COLLIER ON BANKRUPTCY, ¶ 1329.01 at 1329–5 (15th ed.1994)(emphasis added in *In re Solis* ); *see also, In re Klus,* 173 B.R. 51, 58 (Bankr.D.Conn.1994)("legislative history...suggests that § 1329 was designed to accommodate unanticipated changes in the circumstances substantially affecting a debtor's ability to pay...In the final analysis, I conclude that the court should only allow modification if the change of circumstances is unanticipated and substantial..."); *cf. Johnson v. Vanguard Holding Corp. (In re Johnson),* 708 F.2d 865 (2d Cir.1983)(stating in *dicta* that modification of confirmed plan is appropriate to accommodate debtor's unforeseen change in circumstances). "This view comports with the legislative history suggesting that § 1329(a) was enacted to complement the 'ability-to-pay' test of § 1325(b)." *In re Richardson,* 192 B.R. 224, 226 (Bankr.S.D.Cal.1996)(footnote omitted); *see also, Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary,* 97th Cong., 1st Sess. 181, 215–16, 221 (1981–82) [10]; *In re Solis,* 172 B.R. at 532 (holding that Code § 1329 requires the modified plan comply with Code § 1325(b)); *In re Klus,* 173 B.R. at 58 n. 10 (stating in *dicta* that "[s]ection 1329(b)(1) specifies that the requirements of § 1325(a) apply to the modification but is silent as to § 1325(b). However, § 1325(a)(1) requires compliance with the provisions of chapter 13, which of course include § 1325(b). Arguably, then, an objection to approval of a modification could implicate § 1325(b).").  For purposes of plan modification, an increase in income or the receipt of a large sum of money constitutes a substantial change. *See In re Solis,* 172 B.R. at 532 (citations omitted). Such a change is unanticipated "where 'a debtor's altered financial circumstances could not have been reasonably anticipated at the time of confirmation by the parties seeking modification.' " *Id., quoting In re Fitak,* 121 B.R. 224, 226 (S.D.Ohio 1990); *see also, In re Walker,* 114 B.R. 847, 849 (Bankr.N.D.N.Y.1990, Gerling, J.)("Post-confirmation modifica-

1992); *Matter of Witkowski,* 16 F.3d 739 (7th Cir.1994); *In re Powers,* 202 B.R. 618 (9th Cir.BAP1996); *In re Jourdan,* 108 B.R. 1020 (Bankr.N.D.Iowa 1989); *In re Evans,* 77 B.R. 457 (E.D.Pa.1987); *In re Perkins,* 111 B.R. 671 (Bankr.M.D.Tenn.1990).  However, adhering to the intimation of the Court of Appeals in *In re Johnson,* courts in the Second Circuit generally prefer a change in circumstances as a condition precedent to modification. *See Johnson v. Vanguard Holding Corp. (In re Johnson),* 708 F.2d 865 (2d Cir. 1983); *In re Solis,* 172 B.R. 530, 532 (Bankr. S.D.N.Y.1994); *In re Klus,* 173 B.R. 51, 58 (Bankr.D.Conn.1994); *In re Walker,* 114 B.R. 847 (Bankr.N.D.N.Y.1990, Gerling, J.).

**10.** *Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary,* 97th Cong., 1st Sess. 181, 215–16, 221 (1981–82)("The ability-to-pay standard would be made applicable to plan modifications following confirmation, by the addi-

tion of a new subsection 1329[a], which would permit the debtor or the holder of an allowed unsecured claim to request modification of the plan in response to changes in the circumstances of the debtor substantially affecting the ability of the debtor to make future payments under the plan. New subsection 1329[a] would provide a measure of flexibility not presently available by permitting accommodation of the performance required under the chapter 13 plan to better suit the actual circumstances encountered during the course of the plan...The purpose of this amendment is to permit the debtor or the holder of an allowed unsecured claim to request modification of a confirmed chapter 13 plan in response to changes in circumstances of the debtor substantially affecting (favorably or unfavorably) the ability of the debtor to make payments under the plan, as determined by reference to the ability-to-pay test set forth in § 1325"), *as quoted in. In re Fitak,* 92 B.R. 243, 249 (Bankr.S.D.Ohio 1988).

tion...may be allowed where the modified plan would have been appropriate had the present circumstances existed originally.") (citation omitted). In the instant proceeding, the acquisition of $5,800 by the Furgesons is clearly both unanticipated, considering it was not possible at confirmation for the Trustee to foresee the prosecution of the Debtors' § 362(h) claim since the Debtors failed to notify him of the pending claim, and substantial, considering the unsecured creditors anticipate only a 5% dividend and the settlement sum constitutes over 80% of the total payout contemplated under the Furgeson Plan. The sole modification sought by the Trustee is the increase in the dividend receipt by the unsecured creditor class from 5% to 31%, which modification is to be funded by the subject settlement proceeds, namely, property of the estate. Consequently, this Court finds that under the circumstances modification of the Furgeson Plan as proposed by the Trustee is appropriate.[11]

As a final note on modification, the Court finds meritless the Furgesons' contention that modification of their Plan is inappropriate since the result will return a portion of the settlement proceeds to Otsego, whose alleged willful conduct resulted in the Furgesons obtaining the funds in the first instance. This argument fails to recognize the rights of all of the estate's unsecured creditors, other than Otsego, each of whom is currently receiving a pittance of their original claim. In this regard, inequity would result only if the Furgesons were allowed to retain that which properly belongs to the estate.

### III. Attorney's Fees

██ Pursuant to Code § 330(a)(4)(B) the court may allow a chapter 13 debtor's

counsel reasonable compensation "based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." Code § 330(a)(4)(B). The burden of demonstrating entitlement to the fee requested lies with the fee applicant. *See In re Thorn*, 192 B.R. 52, 55 (Bankr.N.D.N.Y. 1995, Gerling, C.J.), *citing Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)(parenthetical quotation omitted). When contemplating a fee applicant's request, "Code § 330(a)(3) requires that a court examine the nature, extent and value of the services for which compensation is sought and make a determination of the amount of 'reasonable' compensation based on...[a number of] factors..." *In re Thorn*, 192 B.R. at 55. These factors include the time the attorney devoted to the debtor's case, the attorney's rate for such services, the necessity of the services provided to the administration of the debtor's case, the reasonableness of the amount of time dedicated to the debtor's case, and whether the compensation requested is reasonable based on what comparably skilled attorney's charge in non-bankruptcy cases. *See id.* Pursuant to Federal Rule of Bankruptcy Procedure 2016, such applications for compensation from the estate must include a statement detailing the nature and extent of services and expenses as well as the amount of such compensation requested. *See* Fed. R.Bankr.P. 2016; *see also,* Local R.Bankr.P. 2016–1(a) (N.D.N.Y.)(outlining the local requirements for applications for compensation.).

██ In the instant cases there is no evidence currently before the Court which

---

**11.** By virtue of Code § 1329 the right to seek modification is reserved exclusively to the debtor, trustee and unsecured creditors. *See* Code § 1329(a). As such, the settlement proceeds in the *Carson* case will be payable to the Trustee pending a motion to modify the current plan by a party authorized to make such motion.

would enable it to determine the reasonableness of the attorneys' fees requested. In this regard, the Debtors' counsel has failed to carry its burden to establish entitlement to the fees requested. *See In re Thorn,* 192 B.R. at 55. Moreover, the only defense offered to the Trustee's objections that the fees requested are unreasonably excessive is the Debtors' counsel's contention that the fees sought are reasonable in light of other comparable cases allowing similarly disproportionate awards of attorneys' fees.[12] *See* Furgeson Memo, at 3–4. This, however, does not provide the Court with a sufficient basis to examine the reasonableness of the fees requested. In this regard, the Debtors' counsel will be directed to submit contemporaneous time records evidencing the time, nature and extent of services provided in prosecuting the Furgesons' § 362(h) Motion and the Carsons' § 362(h) and Contempt Motions.

Based on the foregoing, it is hereby

ORDERED, that the Debtors' Settlement Motions are granted in part and denied in part, and it is further

ORDERED, that the Trustee's Motion to Modify the Furgeson Plan is granted, and it is further,

ORDERED, that Otsego is directed to pay the sum of $5,800 to the Trustee in satisfaction of the pending § 362(h) Motion in the *Furgeson* case, and it is further

ORDERED, that Lincare is directed to pay the sum of $3,500 to the Trustee in satisfaction of the § 362(h) Order, money

judgment and pending Contempt Motion in the *Carson* case, and it is further

ORDERED, that the Trustee is directed to stay any distribution of such proceeds to creditors until such time as a determination is made as to the reasonableness of the attorneys' fees requested in these cases, and it is further

ORDERED, that the Debtors' counsel is directed to submit contemporaneous time records evidencing the time, nature and extent of services provided in prosecuting the Furgesons' § 362(h) Motion and the Carsons' § 362(h) and Contempt Motions within thirty days of the date of this Order.

---

**12.** Debtors' counsel cites *In re McCormack,* 203 B.R. 521 (Bankr.D.N.H.1996) and *In re Poole,* 242 B.R. 104 (Bankr.N.D.Ga.1999) for the proposition that attorneys' fees in cases such as these that are significantly disproportionate to the injured's recovery are not unreasonable. In *In re McCormack* the court's $8,000 attorneys' fee award was based on the over 70 attorney hours spent on the debtor's case and in no way was based on a percentage of the debtor's total recovery as suggested by Debtors' counsel. *See In re McCormack,* 1995 WL 907865, *1 (Bankr.D.N.H.1995). In *In re Poole,* the court's award of over $15,000 was based on the attorneys' "itemized summary of hours expended" on the debtor's case including attendance at numerous hearings and the preparation and filing of briefs. *See In re Poole,* 242 B.R. at 112.