In re Ray POOLE, Jane K. Poole, Debtors.

Ray Poole, Movant,

v.

U.B. Vehicle Leasing, Inc.; Bridgers, Stringfellow, Bland & Peters, Respondents.

No. 94–70461.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Oct. 6, 1999.

---

David L. Miller, Law Offices of David L. Miller, Atlanta, GA, for Debtors.

Forrest K. Clinard, Northcutt, Edwards & Moore, Atlanta, GA, for Respondents.

## ORDER ON DEBTORS' MOTION FOR SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION

MARGARET H. MURPHY,
Bankruptcy Judge.

Before the court is Debtor's motion for imposition of sanctions against Respondents for violation of the discharge injunction of 11 U.S.C. § 524. Respondents oppose Debtors' motion ·for sanctions. Hearings were held during which all parties presented evidence and argument. The parties also filed written memoranda of law in support of their respective positions.

### FINDINGS OF FACT

In March 1990, U.B. Vehicle Leasing ("UBV") entered into a vehicle lease with Continental Recovery Corporation ("CRC"). CRC's payments under the lease were guaranteed by Debtor.[1] Debt-

---

1. Use of the singular "Debtor" refers to Ray Poole and not to the joint debtor, Jane K. Poole.

or was the principal in CRC, a collection agency. On December 12, 1991, after repossessing the vehicle leased to CRC, UBV, through its attorneys, Bridgers, Stringfellow, Bland & Peters ("BSBP"),[2] filed a complaint in Cobb County State Court against CRC and Debtor to collect the balance due under the lease (the "Cobb Lawsuit"). Debtor and CRC, through their attorney, David W. Wallace, filed an answer and counterclaim to the complaint January 17, 1992.

On July 19, 1993, while the Cobb Lawsuit was still pending, CRC filed a Chapter 11 bankruptcy case. On October 21, 1993, the attorney representing Debtor and CRC in the Cobb Lawsuit withdrew from that representation and filed a notice with the Cobb County State Court that Debtor and CRC should thenceforth be served at the corporate address. When BSBP received notice of CRC's bankruptcy case, further action in the Cobb Lawsuit was stayed.

On August 1, 1994, Debtors filed a Chapter 13 bankruptcy case. The schedules[3] listed UBV as a creditor. The address Debtors provided for service of UBV was a correct address. Debtors did not list BSBP as a creditor and did not include BSBP on the list of parties who should be served with notices in the bankruptcy case. On August 5, 1994, the Notice of Commencement of Case was mailed to UBV and, as it was correctly addressed, it is presumed to have been received by UBV. At least three other notices involving Debtors' bankruptcy case, including notice of conversion to Chapter 7 and notice of Debtors' discharge were mailed to UBV. UBV does not dispute that it received notice of Debtors' bankruptcy filing, but explains that, at that time, UBV's computer system did not allow for searches by

guarantors' names. As UBV was unable to match the bankruptcy notice with any of its accounts, UBV took no further action. Specifically, UBV did not contact Debtors' attorney or its own Georgia attorney to attempt to ascertain why UBV was receiving notices regarding Debtors' bankruptcy case. UBV also explained that its standard practice would have been to contact the Debtors' attorney about the bankruptcy if UBV could not determine why it received the bankruptcy notice but also explained that in 1994, UBV was in a growth period and had employed a number of temporary employees who apparently failed to handle Debtors' bankruptcy notice properly.

On August 14, 1994, CRC's Chapter 11 case was dismissed. Because it had no actual notice of Debtors' bankruptcy case, upon dismissal of CRC's bankruptcy case, BSBP filed a motion in the Cobb Lawsuit for a special setting for trial and for a pretrial conference. Debtor was served with the pleadings in the Cobb Lawsuit at the CRC corporate address, which was no longer a valid address. Therefore, Debtors had no actual notice that proceedings in the Cobb Lawsuit had recommenced. Following the pretrial conference, which Debtor did not attend because he had no notice of it, BSBP filed a motion for summary judgment, to which Debtor failed to file a response, again, because Debtor had no notice of the motion for summary judgment because it had been served upon Debtor at the invalid corporate address. Based upon the failure of Debtor and CRC to respond to the motion for summary judgment, judgment was entered February 16, 1995, against Debtor and CRC, both on the claims in the complaint and on the counterclaims in the answer. On

---

2. In the course of the hearings held in this matter, BSBP revealed that it is not, in fact, a partnership of attorneys. The correct business name is Daniel F. Bridgers, P.C. All the attorneys in the firm are employees of that professional corporation, which does business as BSBP.

3. Bankruptcy Rule 1007 requires a debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs.

March 14, 1995, BSBP obtained a writ of *fieri facias*, showing a judgment in the amount of $13,810.

On March 31, 1995, BSBP requested and obtained a full credit report on Debtor. That credit report showed the CRC corporate address, as well as Debtor's home address, which was at that time and remains a valid address for Debtor. The credit report also showed the bankruptcy case Debtors filed in August, 1994. Apparently, however, BSBP's employee who reviewed the credit report failed to detect or note Debtors' bankruptcy filing, or bring it to the attention of any attorney in the firm. Shortly after the judgment in the Cobb Lawsuit was entered, BSBP sent a letter to Debtor about the entry of judgment against him and sent Debtor post judgment discovery requests, both of which were mailed to the invalid corporate address and neither of which was received by Debtor.

BSBP apparently undertook no further action to collect on UBV's judgment against Debtor until January 15, 1997, when BSBP ordered another full credit report on Debtor. Again, the credit report showed Debtor's correct home address and showed the bankruptcy case Debtors had filed in 1994. The credit report also showed that Debtor was employed by Sears and BSBP immediately commenced, on January 30, 1997, a continuing garnishment of Debtor's wages from Sears. Because BSBP continued to serve Debtor at the CRC corporate address, Debtor received no notice of the garnishment until told of it by his employer when money was deducted from his paycheck.

When Debtor learned of the garnishment, Debtor contacted his bankruptcy lawyer, David Miller. In March, 1997, Mr. Miller prepared, filed and served BSBP with a traverse to the garnishment (the "Traverse") and a motion to set aside the judgment against Debtor in the Cobb Lawsuit (the "Motion to Set Aside"). Upon receiving the traverse, BSBP contacted Mr. Miller to ascertain the grounds for the traverse. When informed of Debtors' Chapter 7 discharge, BSBP immediately dismissed the garnishment.[4] BSBP filed a response to the Motion to Set Aside, however, and requested a hearing on that motion. On May 22, 1997, Debtors' attorney contacted BSBP requesting cancellation of the writ of *fieri facias*. On May 23, 1997, BSBP mailed Debtor's attorney the original writ of *fieri facias* with a cancellation notation on the bottom left corner. BSBP believed their action complied with Debtors' attorney's demand and believed that Debtors' attorney intended to and should file the cancellation himself. Debtors' attorney's time entry for May 23, 1997, shows he expected the cancellation to be completed by BSBP and that a copy of the canceled writ would be sent to Debtors' attorney.

Hearing on the Motion to set aside was held June 23, 1997. Debtor's Motion to Set Aside was a brief document filed on behalf of Debtor only. CRC was not mentioned. The motion briefly recited that facts necessary to show the judgment was obtained in violation of the automatic stay of 11 U.S.C § 362 in Debtors' bankruptcy case and should be set aside. The response filed by BSBP on behalf of UBV also failed to mention CRC. The caption on the response contained only Debtor's name and referred only to whether setting aside the judgment would also set aside the judgment on Debtor's counterclaim against

---

4. BSBP dismissed the garnishment without prejudice, rather than with prejudice. Dismissal of the garnishment with prejudice does appear to have been the proper course of action. Dismissal of the garnishment with prejudice would not extinguish the underlying debt but would eliminate that garnishment as a mean of collection of the debt. As § 524 prohibits any attempts to collect the debt, dismissal of the garnishment with prejudice is the only reasonable and proper course of action. Debtors, however, have shown no damages resulting from BSBP's refusal to dismiss the garnishment with prejudice and Mr. Bridgers, the principal of BSBP, testified that he understands that BSBP and UBV are prohibited from any further attempts to collect the judgment against Debtors.

UBV. At the hearing and in the order subsequently entered March 18, 1998, nine months later, the Motion to Set Aside was summarily granted.

As sanctions for violation of the discharge injunction, Debtors seek actual damages, including damages for emotional distress; attorneys fees; and punitive damages. In its response in opposition to Debtors' motion for sanctions, BSBP alleges Debtors' motion for sanctions should be barred by laches. Both BSBP and UBV argue their alleged lack of actual knowledge of Debtors' bankruptcy discharge excuses their actions. Finally, both BSBP and UBV assert Debtors failed to taken certain actions which would have mitigated the damages Debtors seek.

## CONCLUSIONS OF LAW

■ The defense of laches requires the court to consider (1) proof of delay in asserting a claim despite the opportunity to do so, (2) lack of knowledge on the part of the respondents that a claim would be asserted, and (3) prejudice to the respondents by the allowance of the claim. Mere passage of time is insufficient to constitute laches. Respondents must show reliance and a change of position resulting from the delay. *In re Cutillo*, 181 B.R. 13 (Bankr. N.D.N.Y.1995). In the instant case, the order setting aside the judgment in the Cobb Lawsuit was entered March 17, 1998, and Debtors filed this motion for imposition of sanctions October 23, 1998. Seven months is not an unreasonable delay. Additionally, BSBP failed to show prejudice resulted from the delay. No faded memories or lost documents have prevented BSBP or UBV from presenting a defense to Debtors' motion. Therefore, BSBP's laches argument is without merit.

■ Without dispute, BSBP's motion for summary judgment on behalf of UBV, and the subsequent entry of judgment against Debtor violated the automatic stay. Likewise, the issuance of the writ of *fieri facias* violated the automatic stay and the continuing lien on Debtors' real property

which resulted also violated the § 524 discharge injunction. Additionally, the garnishment of Debtor's wages from his employer violated the discharge injunction. Debtors seek sanctions with respect to the violations of the discharge injunction only. BSBP and UBV may be liable for contempt under 11 U.S.C. § 105 if their violation of the discharge injunction was willful. *Hardy v. IRS*, 97 F.3d 1384 (11th Cir. 1996). As with the test for violations of the automatic stay, violation of the discharge injunction is "willful" if the creditor knew the discharge injunction was invoked and intended the actions which violated the discharge injunction. *Id.* at 1390.

■ The parties do not dispute that they intended the actions which violated the discharge injunction. BSBP and UBV argue, however, that their conduct was not willful because it occurred without knowledge of the discharge injunction. UBV was served with notice of Debtors' bankruptcy filing and with notice of Debtors' discharge but mistakenly failed to properly note the bankruptcy filing in their records. BSBP had in its files two credit reports, one from March 1995 and a second from January 1997, which reflected Debtors' bankruptcy filing, but BSBP alleges no attorney ever reviewed those credit reports and noted the bankruptcy filing in their records. Such allegations, however, are insufficient to show a lack of actual notice of Debtors' bankruptcy filing and discharge. Employees of UBV and BSBP received actual notice and notice to those agents may be imputed to the principal. *Waswick v. Stutsman County Bank*, 212 B.R. 350 (Bankr.D.N.D.1997). UBV is charged with knowledge of Debtors' bankruptcy filing from its inception and BSBP is charged with knowledge of Debtors' bankruptcy filing as of March 31, 1995, the date it received the first credit report.

■ BSBP attempts to argue that Debtors had a duty to notify BSBP of their bankruptcy filing. Including BSBP in the mailing matrix in addition to UBV

may have been a prudent course to take but was not required. An attorney who has represented a creditor in a state court proceeding does not, by virtue of that relationship alone, represent that creditor with respect to the same debt in bankruptcy court. *Lubeck v. Littlefield's Restaurant Corporation (In re Fauchier)*, 71 B.R. 212 (9th Cir. BAP 1987). BSBP also attempts to argue Debtors had a duty to file a plea of stay in bankruptcy in the Cobb Lawsuit. A bankruptcy debtor does not have the burden to personally contact its creditors to assure they take action to protect their interests. When notice of a bankruptcy filing is received, the burden is on the creditor to take appropriate action, including filing a proof of claim, discontinuing any efforts to collect a claim, and taking affirmative action to undo any action which may have been taken without notice of the bankruptcy in violation of the automatic stay or the discharge injunction. *See Jove Engineering, Inc. v. Internal Revenue Service*, 92 F.3d 1539, 1557 (11th Cir.1996).

■ BSBP's assertion that Debtors should have filed a plea of stay of bankruptcy in the Cobb Lawsuit is without support in the Bankruptcy Code or bankruptcy law since enactment of the Code in 1978. Debtors had no actual notice that BSBP had reactivated the lawsuit. BSBP's service of Debtor regarding reactivation of the Cobb Lawsuit at the invalid corporate address was not unreasonable because that address was the only address of record in the Cobb Lawsuit. After the judgment was entered, however, and after BSBP requested and obtained Debtor's credit report, which contained his correct, current home address, BSBP's stubborn refusal to serve Debtor at any address other than the corporate address was unreasonable and appears designed to deprive Debtor of notice required by constitutional due process. Debtors knew that notice of the bankruptcy had been sent to UBV, and therefore, had no reason to believe the lawsuit was ongoing. The conduct of BSBP and UBV was intentional and with knowledge of Debtors' bankruptcy filing and discharge injunction. Therefore, their conduct was willful.

■ Compensatory damages and attorneys fees may be awarded as sanctions pursuant to 11 U.S.C. § 105. *Hardy*, 97 F.3d 1384, 1390, *citing Jove Engineering*, 92 F.3d 1539, 1557–58. Punitive damages are not available under § 105. *Id.* Punitive damages may be imposed, however, pursuant to the court's inherent contempt powers if the actions were taken in bad faith. *Hardy*, 97 F.3d 1384; *Jove Engineering*, 92 F.3d 1539; *Glatter v. Mroz*, 65 F.3d 1567 (11th Cir.1995). *See also, Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Debtors contend BSBP and UBV willfully violated the discharge injunction by filing the garnishment, by failing to record the release of the writ of *fieri facias*, and by opposing the Motion to Set Aside the judgment in the Cobb Lawsuit.

■ Promptly after receiving Debtor's traverse to the garnishment and learning by telephone of Debtors' bankruptcy discharge, BSBP dismissed the garnishment without prejudice and returned to Debtor the funds BSBP had received as a result of the garnishment. BSBP argues that a simple telephone call from Debtors' attorney would have been sufficient to prompt the dismissal and return of funds, and that the expense of filing the traverse was unnecessary. In the context of Mr. Miller's fees in connection with BSBP's violation of the discharge injunction, the time expended on the traverse was relatively small and not unreasonable in the context of this proceeding.

■ Regarding the approximately $50 difference between the amount deducted from Debtor's paycheck under the garnishment and the amount refunded to Debtor by BSBP, BSBP explained that state law permits the employer to retain an amount to cover its legal fees. BSBP appears to suggest that, because it did not receive those funds, it has no obligation to reim-

burse Debtor. If the garnishment had not been filed, however, the employer would not have incurred such costs and would not have been entitled to retain such fees from Debtor's paycheck. The employer is not obligated to return that amount to Debtor, as it in no way violated the discharge injunction or state law. That amount is an element of damages arising from BSBP's conduct and should be reimbursed to Debtor by BSBP.

Debtors argues that the garnishment caused Debtor and his wife significant emotional distress for which they are entitled to compensation. In support of the claim for damages for emotional distress, Debtor showed that the garnishment caused him and his wife to relive the humiliation of their bankruptcy, as well as the humiliation of garnishment. Debtors showed that Mrs. Poole was so distressed that she sought treatment from a psychological therapist. Mr. Poole was stigmatized at work *and* has been deprived of some perquisites of his employment which he had previously enjoyed, including such benefits as free tickets to certain sporting and entertainment events.

■ The bankruptcy court may award compensatory damages for emotional distress caused by a willful violation of the automatic stay or discharge injunction. *In re Rollins*, 200 B.R. 427 (Bankr.N.D.Ga. 1996). Medical testimony is not necessary to support a claim for damages for emotional distress caused by the willful violation of the discharge injunction. *See In re Flynn*, 185 B.R. 89 (S.D.Ga.1995). The garnishment of Debtor's wages so long after entry of Debtors' bankruptcy discharge, which Debtors justifiably believed protected them from such actions, was certainly shocking and humiliating and perhaps more so because of the time that had passed since their bankruptcy case was closed. Additionally, BSBP's failure to properly serve Debtor with notice of the garnishment proceedings made discovery of the garnishment all the more shocking. Assessment of damages for emotional dis-

tress in the amount of $1,200 is appropriate.

■ Debtors showed that, upon request by Debtors' attorney that BSBP cancel the writ of *fieri facias*, BSBP inserted a typewritten cancellation notation on the writ and sent the original writ to Debtors' attorney. That action seems somewhat unusual in light of BSBP's other efforts to protect its client by refusing to dismiss the garnishment with prejudice and by opposing the Motion to Set Aside, but BSBP's actions may have been an innocent misconstruction of the request by Debtors' attorney. Nevertheless, $150 is a reasonable amount to allow for Debtors to accomplish the proper filing or recording of the canceled writ.

■ Although BSBP promptly dismissed the garnishment and even promptly provided to Debtors' attorney the canceled writ of *fieri facias*, BSBP was not so prompt in its actions regarding setting aside the judgment against Debtor in the Cobb Lawsuit. BSBP filed a response and requested a hearing on the matter. Any judgment against Debtor, entered while the automatic stay was in effect, was void. *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306 (11th Cir.1982). The responsibility remained, however, for BSBP to cleanse the public record of the void judgment against Debtor. Such responsibility included both the judgment on UBV's complaint and the judgment on Debtor's counterclaim. At the time Debtors' bankruptcy petition was filed, the counterclaim against UBV was a contingent asset of the estate, i.e. property of the estate protected by the automatic stay. BSBP's attempt in its opposition to the Motion to Set Aside to preserve the judgment in UBV's favor on Debtor's counterclaim is completely unsupported by bankruptcy law. BSBP belatedly argued at the hearings on Debtors' motion for sanctions that it filed the response to the Motion to Set Aside in an effort to preserve UBV's judgment against CRC. That argument,

however, is unsupported by BSBP's response to the Motion to Set Aside, which made no mention of CRC. Additionally, such an argument by BSBP appears specious, as the Motion to Set Aside itself also did not mention CRC and sought no relief as to CRC.

Both BSBP and UBV failed to employ appropriate safeguards to avoid initial violations of the automatic stay or the discharge injunction, and such failures will not relieve either BSBP or UBV of a finding that their actions were willful. That aspect of their conduct does not appear to evidence bad faith or actual malice. BSBP's opposition to Debtor's Motion to Set Aside, however, was completely unsupported by the facts or the law. The logical inference is that BSBP employed its opposition to the Motion to Set Aside as a tool to coerce Debtor into dismissing or abandoning the counterclaim. That motive is supported by testimony of the BSBP attorney who handled the opposition to the Motion to Set Aside and who admitted that he made such an offer. Such conduct constitutes bad faith and subjects BSBP to punitive damages. Assessment of punitive damages in the amount of $7,500 is appropriate.

Debtor presented evidence regarding expenses he incurred in connection with the violation of the discharge injunction by UBV and BSBP. Allowance of actual damages in the amount of $411, in addition to the damages for emotional distress, is appropriate. The parties stipulated to Mr. Miller's attorneys fees in the amount of $1,555.

Both BSBP and UBV challenged the qualifications of Debtors' attorney, Mr. Starkey, in an effort to show Mr. Starkey's $175 hourly rate is excessive. Mr. Starkey showed, however, that, while he has little experience in bankruptcy cases, he has substantial litigation experience. Furthermore, this court's evaluation of Mr. Starkey's skill, both in the courtroom and in his written pleadings, shows that his skill is equal to other more experienced bankruptcy attorneys charging similar hourly rates. Mr. Starkey testified that he voluntarily reduced the number of billed hours for such additional time as was required for him to educate himself regarding bankruptcy law. Mr. Starkey presented an itemized time summary of the hours expended up to and including December, 1998. Thereafter, Mr. Starkey filed two written briefs and participated in the final hearing and closing argument. Total attorneys fees for Mr. Starkey in the amount of $13,895, plus costs of $130 (for the filing fee for reopening this case), are appropriate. Accordingly, it is hereby

ORDERED that Debtors' motion for sanctions is granted. Actual compensatory damages for Debtors are assessed against UBV and BSBP, jointly and severally, in the amount of $1,611, plus an additional $150 allowance to accomplish the appropriate filing of the canceled writ of *fieri facias*. Attorneys fees in the amount of $1,555 are assessed against UBV and BSBP, jointly and severally, for the services of Mr. David Miller: of that amount, $641.25 shall be disbursed to Mr. Miller directly and the balance disbursed to Debtors as reimbursement for fees already paid to Mr. Miller. Attorneys fees in the amount of $13,895 are assessed against UBV and BSBP, jointly and severally, for the services of Mr. Rory Starkey; of that amount, $13,395 shall be disbursed to Mr. Starkey directly and $500 shall be disbursed to Debtors as reimbursement for fees already paid to Mr. Starkey. Punitive damages in the amount of $7,500, payable to Debtors, are assessed against BSBP.